890 So.2d 219 (2004)
Daniel PETERKA, Appellant,
v.
STATE of Florida, Appellee.
Daniel Peterka, Petitioner,
v.
James V. Crosby, Jr., etc., Respondent.
Nos. SC02-1410, SC03-482.
Supreme Court of Florida.
September 30, 2004.
Rehearing Denied December 22, 2004.
*225 Linda McDermott, Assistant Capital Collateral Counsel, Northern Region, Tallahassee, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General and Charmaine M. Millsaps, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Daniel Peterka was sentenced to death for the 1989 murder of his roommate, John Russell. This Court affirmed Peterka's first-degree premeditated murder conviction and death sentence. See Peterka v. State, 640 So.2d 59, 62 (Fla.1994). Peterka now appeals a trial court order denying postconviction relief following an evidentiary hearing and further petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the trial court's order denying Peterka postconviction relief and deny Peterka's habeas petition.

FACTS AND PROCEDURAL HISTORY
The facts of this case are fully set forth in this Court's opinion on direct appeal. See Peterka, 640 So.2d at 62-65. Briefly stated, Peterka fled Nebraska in February 1989 after being sentenced to a one-year prison term for theft. He reappeared in Niceville, Florida, and sometime in April 1989, he moved into a rental duplex with Russell because Russell was having difficulty paying the rent. On June 27, 1989, Peterka obtained a duplicate driver's license with his picture and Russell's name. Peterka then cashed a $300 money order that was payable to Russell and had been mailed to Russell by a relative. Russell suspected that Peterka had stolen the money order but told several people that he was not going to confront Peterka, who kept a gun at the house.
Russell was reported missing by his friend and co-worker, Gary Johnson, on July 13, 1989. Sheriff's Deputy Daniel Harkins questioned Peterka about Russell's whereabouts, and subsequently ran Peterka's name and birth date in the sheriff's office's computer, which indicated that Peterka was a fugitive from Nebraska with an outstanding warrant. Peterka was arrested early the next morning.
On July 18, 1989, Peterka gave a statement to police in which he admitted shooting Russell. This Court summarized Peterka's statement as follows:
Peterka forged Russell's signature and cashed the money order. He paid Russell one hundred dollars to use Russell's identification. Russell instigated a shoving *226 match over the money order that escalated into a fight in the living room of the duplex. Both men reached for Peterka's gun, but Peterka got it first. As Russell got up from the couch, the weapon accidentally fired and the bullet entered the top of Russell's head. Russell fell down on the couch. Peterka wrapped Russell's body in a rug, drove to a remote part of Eglin Air Force Base, and buried the body in a shallow grave.
Id. at 64. Peterka subsequently led police to Russell's body and gave a videotaped statement similar to the statement he had given earlier. This videotaped statement was introduced into evidence at trial.
The medical examiner testified that Russell died from a close-range gunshot wound to the head and that the wound was consistent with Russell having been shot from behind while in a reclining position. A firearms expert testified that in his opinion Peterka's gun would not accidentally fire and that the gun had two safety mechanisms that would prevent it from firing unless the trigger was pulled.
The jury found Peterka guilty of first-degree premeditated murder. During the penalty phase, Peterka presented the testimony of friends and family members to establish mitigation. Collectively they testified that Peterka is a good brother and son, is caring and understanding, is an excellent, responsible employee, and is always helpful. Peterka also testified on his own behalf, stating that he feels he has something to share with society and that if he could bring Russell back he would be glad to give his life. At the conclusion of the penalty phase, the jury recommended the death penalty by a vote of eight to four. After weighing the aggravating and mitigating circumstances, the trial court followed the jury's recommendation and sentenced Peterka to death.[2]
Peterka raised twelve issues on appeal. See id.[3] We concluded that the trial court erred by (1) allowing the State to present *227 evidence of Peterka's juvenile record during the penalty phase, (2) failing to merge the hinder law enforcement aggravator with the avoid arrest aggravator, and (3) finding the pecuniary gain aggravator. See id. at 70-71. However, we further concluded that these errors were harmless and affirmed Peterka's conviction and sentence. See id. at 72-73.
Peterka filed a motion for postconviction relief under Florida Rules of Criminal Procedure 3.850 and 3.851, in which he raised numerous claims.[4] Following a Huff[5] hearing, the circuit court held an evidentiary hearing on many of these claims. During the hearing, Peterka presented the testimony of his mother, father, sister, and brother regarding his military service, relationships with family, and history of good deeds and nonviolent behavior. Peterka testified as to his good behavior in jail, including his refusal to participate in an escape planned by his cellmates. Allen Atkins, a Lieutenant with the Okaloosa County Jail, testified regarding Peterka's good behavior. Peterka also presented the testimony of Dr. Joseph Cohen, an expert in the field of forensic pathology, who reviewed the physical evidence in the case and disagreed with the medical examiner's conclusions about the trajectory of the bullet through Russell's skull.
In rebuttal, the State presented the testimony of Peterka's trial counsel, Assistant Public Defenders Earl D. Loveless and Mark V. Harlee, investigator James W. Graham, and Dr. Edward Berkland, the *228 Medical Examiner for the First Judicial Circuit. Because Peterka's file was destroyed in a flood, Loveless, Harlee, and Graham were unable to review their notes on Peterka's case and testified based solely on their independent recollections of what occurred at trial twelve years earlier.
The trial court issued an order denying relief and Peterka appeals, raising six issues, which include numerous subissues, for this Court's review.[6] Peterka also petitions for a writ of habeas corpus, raising eight claims for relief.[7]

POSTCONVICTION APPEAL

I. Ineffective Assistance of Counsel
In his first four issues on appeal, Peterka asserts that the trial court erred in denying his numerous claims of ineffective assistance of counsel (A) during the guilt phase generally, on a number of grounds, (B) during the guilt phase for failing to advise Peterka of his right to testify, (C) during the penalty phase, and (D) during voir dire. In order to be entitled to relief on a claim of ineffective assistance of counsel, Peterka must establish
deficient performance and prejudice, as set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Rutherford v. State, 727 So.2d 216, 218 (Fla.1998). As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. at 694, 104 S.Ct. 2052; Rutherford, 727 So.2d at 220.
Gore v. State, 846 So.2d 461, 467 (Fla.2003).
Both the performance and prejudice prongs of Strickland are mixed questions of law and fact, and the Court will give deference to the trial court's findings of fact that are supported by competent, *229 substantial evidence. See Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999). Further, as the United States Supreme Court explained in Strickland,
[j]udicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.
466 U.S. at 689, 104 S.Ct. 2052. We address Peterka's first four issues, raising ineffective assistance of trial counsel claims, separately below.

A. Guilt Phase
Peterka first asserts that the trial court erred in denying eight claims of ineffective assistance of counsel during the guilt phase. Specifically, Peterka argues that trial counsel were ineffective for (a) failing to present a coherent theory of defense, (b) conceding Peterka's guilt of first-degree premeditated murder, (c) failing to present expert testimony about the physical evidence, (d) failing to investigate and present evidence of the full extent of Russell's poor financial situation, (e) failing to undermine the State's hearsay evidence that Russell was not going to confront Peterka about the stolen money order, (f) failing to prevent suppressed evidence from reaching the jury, (g) failing to present an adequate closing argument, and (h) failing to object to improper prosecutorial argument. We conclude that trial counsel were not ineffective for any of the aforementioned reasons and therefore affirm the trial court's denial of relief.
Peterka's first claim is that trial counsel failed to present a coherent theory of defense. We conclude that in light of Peterka's statement to police, trial counsel presented a viable, coherent defense strategy of either self-defense or unintentional killing. Peterka relies on the language in this Court's 1936 decision in Hopson v. State, 127 Fla. 243, 168 So. 810 (1936), to support his argument that trial counsel were ineffective for relying on the theory of self-defense. However, this Court was not addressing an ineffective assistance of counsel claim in Hopson, but was deciding whether a new trial was required because the jury was instructed on self-defense when there was no evidence presented in support of the theory. See id. at 811.
We conclude that Henry v. State, 862 So.2d 679 (Fla.2003), presents circumstances closer to those in Peterka's case. In Henry, we rejected a defendant's claim that counsel was ineffective for relying on the theories of self-defense and diminished capacity. See id. at 682. The defendant argued that the theory of self-defense was not viable because "he stabbed his wife many times and the police presented evidence contradicting that theory." Id. However, evidence was also elicited at trial that the victim had a violent nature and attacked the defendant first. See id. Noting that self-defense was consistent with the defendant's version of events, that trial counsel presented enough evidence to justify a jury instruction on self-defense, and that trial counsel argued in the alternative for a "depraved mind, second-degree murder conviction," this Court concluded that the defendant failed to establish deficient performance. Id.; see also Lusk v. State, 498 So.2d 902, 905 (Fla.1986) (concluding that "trial counsel's decision to rely on self-defense ... was a strategic choice which did not fall outside *230 the acceptable range of competent choices").
Here, the State's theory was that Peterka came up behind Russell as Russell was lying on the couch and shot him in the head at close range. Although Peterka did not testify during the guilt phase, his videotaped statement to police was presented to the jury. According to Peterka, Russell instigated the fight, both he and Russell reached for the gun, and as Russell was coming towards him, Peterka accidentally fired the gun. See Peterka, 640 So.2d at 64.
Assistant Public Defender Loveless, who was responsible for presenting the guilt phase defense at trial, testified at the evidentiary hearing that based on Peterka's videotaped statement, the theory of defense was either an accidental shooting or self-defense. Loveless stated that in light of Peterka's statement and the fact that Peterka was the one in possession of the gun, Loveless did not think the jury would acquit Peterka on a pure accident or self-defense theory. Rather, Loveless said that realistically he was hoping that these theories, perhaps in tandem, would lead to a verdict of guilty of manslaughter. Loveless's postconviction testimony is supported by the trial record. Further, as in Henry, defense counsel presented sufficient evidence to have the jury instructed on both excusable and justifiable homicide. Thus, we conclude that Loveless's performance was not deficient in this regard and that the trial court did not err in denying this claim for relief.
In his second claim, Peterka asserts that trial counsel were ineffective for conceding Peterka's guilt during opening statements. This claim is refuted by the record. A review of Loveless's opening statement confirms that he did not admit that Peterka was guilty of first-degree premeditated murder. Rather, Loveless conceded only that if the prosecutor proved the facts he promised to prove, the jury could find Peterka guilty. Further, Loveless explained why he did not believe the prosecutor could establish the facts necessary to prove first-degree premeditated murder. In fact, in his closing argument Loveless asked the jury to hold the prosecutor to his promise about what the evidence would show and argued that the State did not meet its burden of proof. Thus, the trial court properly denied this claim.
Peterka's third claim of ineffective assistance during the guilt phase is that counsel were ineffective for failing to present expert testimony about the physical evidence. During trial, Dr. Edmund Kielman, the medical examiner who conducted the autopsy on Russell, testified about the physical evidence, including the trajectory of the bullet and the nature of the gunshot wound. Dr. Kielman used Russell's skull, which he had reconstructed, as a demonstrative aid during his testimony on these issues. Dr. Kielman opined that the gun was in contact with or almost in contact with Russell's skull when it was fired.[8] With regard to the trajectory of the bullet, Dr. Kielman identified a hole in the top of Russell's skull as the bullet's point of entry. Dr. Kielman then identified a large hole at the bridge of the nose, which he initially concluded was where the bullet exited. However, after being questioned by defense counsel during a deposition about the possibility that the bullet went straight down from the top of the head, Dr. Kielman began to consider this scenario. *231 A few days before trial, Dr. Kielman reconstructed the skull and noticed a sizable hole at the base of the skull. Dr. Kielman testified at trial that he now believed this was the exit wound, rendering the trajectory of the bullet straight down. Dr. Kielman agreed that this was consistent with Russell being shot from behind while in a reclined position. However, on cross-examination, Dr. Kielman admitted that there were a number of other possible scenarios.
At the postconviction evidentiary hearing, Peterka presented the expert testimony of Dr. Joseph Cohen concerning the exit wound and trajectory of the bullet. Dr. Cohen disagreed with Dr. Kielman's conclusions regarding the trajectory of the bullet. Dr. Cohen explained that when he examined the skull just prior to the evidentiary hearing he found defects or injuries that had not been documented in Dr. Kielman's report. Specifically, Dr. Cohen indicated two holes in the rear of the skull that he opined were more likely where the bullet exited than the other two options considered by Dr. Kielman. In Dr. Cohen's opinion, these injuries were consistent with exiting bullet fragments and this trajectory of the bullet was inconsistent with the State's theory of the murder but would support Peterka's version of events.
The trial court denied Peterka's claim, stating:
The Court finds that the testimony of Dr. Cohen is not credible and completely rejects his opinion and testimony.
Dr. Kielman had testified during the trial regarding the exit wound and trajectory of the bullet. The victim's skull was assembled and used by Dr. Kielman to formulate his opinion and conclusions regarding the method and manner of death. The Court finds that the condition of the skull at the time of the evidentiary hearing was different than the condition of the skull at the time of trial. The skull had been kept in a container, which had bone fragments in the bottom of the container consistent with the skull being crushed while in the container post-trial. The Defendant's postconviction expert, Dr. Cohen, examined the skull in this condition and testified that he could identify exit wounds to the skull that contradicted Dr. Kielman's opinion. Dr. Cohen examined the skull after it had been crushed, but failed to thoroughly examine the skull and the fragments that were inside the skull's container. Dr. Michael Berkland, Okaloosa County Medical Examiner, was called by the state as a witness during the evidentiary hearing to examine the skull. Dr. Berkland did examine the skull and the skull fragments and was able to piece the skull back together, and then testified regarding the "exit wounds" identified by Dr. Cohen. The "exit wounds" identified by Dr. Cohen were actually the result of the post-trial crushing of the skull.
Furthermore, Dr. Berkland opined that the victim in this case was shot while in a reclining position and that the crime scene, condition of the body, and the blood evidence were all consistent with the state's theory of the case. Dr. Berkland concluded that the gunshot wound was a contact wound, which is the same conclusion Dr. Kielman testified to at trial. Accordingly, the Court rejects Dr. Cohen's opinion and testimony.
Moreover, the Defendant's trial counsel testified that Dr. Kielman's trial testimony was consistent with the defense theory of the case. Dr. Kielman's opinion that the exit wound was at the hole in the base of the skull making the trajectory of the bullet straight down was consistent with the Defendant's statement that he shot the victim as the *232 victim came off of the couch with his head pointed at him. Thus, Mr. Loveless made a reasoned tactical decision not to call an additional expert and did not render ineffective assistance of counsel.
This Court has recognized that the trial court has "the superior vantage point to see and hear the witnesses and judge their credibility." Guzman v. State, 721 So.2d 1155, 1159 (Fla.1998). Thus, "[s]o long as its decisions are supported by competent, substantial evidence, this Court will not substitute its judgment for that of the trial court on ... the credibility of the witnesses and the weight to be given to the evidence." Cummings-El v. State, 863 So.2d 246, 250 (Fla.2003) (quoting Porter v. State, 788 So.2d 917, 923 (Fla.2001)).
We find no error in the trial court's rejection of Dr. Cohen's testimony because it was based on the crushed condition of the skull, which occurred after trial. We further conclude that there is no error in the trial court's finding that trial counsel made a reasoned tactical decision not to call a forensic expert. Peterka has thus failed to establish that Loveless's decision not to call an independent forensic expert was deficient performance under the first prong of Strickland, and we affirm the trial court's denial of relief on this claim.
In his fourth claim of ineffective assistance of counsel during the guilt phase, Peterka contends trial counsel were ineffective for failing to introduce evidence of the full extent of Russell's poor financial condition to support Peterka's statement that Russell confronted him about the money order. The trial court rejected this claim, stating:
Mr. Loveless testified during the evidentiary hearing that he was aware of John Russell's poor financial situation but chose not to put on any additional evidence of his financial condition in the defense case. Mr. Loveless made a reasoned tactical decision based on his belief that there had been ample evidence of Mr. Russell's financial situation presented to the jury. Therefore, Mr. Loveless was not ineffective in his representation of Mr. Peterka.
We affirm the trial court's denial of relief on this claim.
During the evidentiary hearing, Loveless testified there was "no question" of Russell's poor financial condition and that he did not put on additional evidence regarding this fact because it undermined Peterka's version of events that Russell shared the $300 check with him. Loveless also stated that he did not want to present any evidence unless it was necessary because he did not want to waive rebuttal closing argument.
At trial, evidence was presented that Russell was in a difficult financial situation. Mrs. Purvis, Russell's landlord, testified on cross-examination that Peterka moved in with Russell because Russell was behind on the rent and needed a roommate. Russell's friend and co-worker, Gary Johnson, testified that he thought it would have been unusual for Russell to leave his cigarettes at home because Russell smoked regularly and did not have the money to leave a pack at home and buy a new one.
In addition, Loveless argued during closing statements that the jury should consider Russell's financial situation in evaluating the testimony that Russell was not going to confront Peterka about the money order:
Would [Russell] have done as people suggest that he did, given the particular financial circumstance he was in? A man in such condition financially, that according to one of his friends, Mr. Johnson, I believe, would never have left *233 a part pack of cigarettes laying around because he could not afford to. They will have you believe that when he comes up missing, three hundred dollars, which to him must have been a small fortune at that time, but he was missing three hundred dollars and he made no effort to ask Dan Peterka about it or find out what happened.
Thus, the issue of Russell's financial status was presented to the jury for its consideration in the State's case-in-chief and Loveless's decision not to present additional evidence of this fact was not deficient performance.
We also conclude that Peterka has failed to establish deficient performance with regard to counsel's failure to rebut hearsay evidence that Russell was not going to confront Peterka about the stolen money order. The trial court found the claim was not sufficiently established under Strickland because Peterka "failed to identify particular evidence that could have been presented to undermine the state's evidence." We agree. Peterka did not present any evidence during the evidentiary hearing that could have been used by trial counsel to undermine the State's evidence on this issue.
Further, we note that Loveless argued during his closing statement that the record contained conflicting evidence about whether Russell was going to confront Peterka about the stolen money order. Specifically, Loveless stated:
[Mr. Elmore] has given you John Russell's family and friends to assure you that he was a peaceful man, had a reputation for peacefulness in the community and would never confront Dan Peterka concerning anything I assume, or especially that check. Except for what Deborah Trently said which was that he would not confront him until the gun was out of the house. I assume he meant by that that he would then confront him. Apparently he was a person who would confront another person.

(Emphasis supplied.) Thus, we affirm the trial court's denial of relief on this claim.
Peterka's sixth claim of ineffective assistance of counsel during the guilt phase involves trial counsel's failure to object to the jury hearing, in a portion of Peterka's videotaped statement, that Peterka signed a second waiver of rights form related to a statement previously held inadmissible. "Whether to object is a matter of trial tactics which are left to the discretion of the attorney so long as his performance is within the range of what is expected of reasonably competent counsel." Stevens v. State, 552 So.2d 1082, 1084 (Fla.1989) (quoting Muhammad v. State, 426 So.2d 533, 538 (Fla.1982)). In Brown v. State, 846 So.2d 1114, 1122 (Fla.2003), we rejected the defendant's claim that trial counsel was ineffective for failing to object to a witness's testimony regarding statements made by the victim. We agreed with the trial court that counsel's decisions not to object were "trial tactics on his part not to object to what he perceived as very minor hearsay matters." Id.
In this case, Loveless indicated at trial that he did not ask that the videotape be edited to exclude the reference to Peterka's signature on a previous waiver of rights form because he did not think that the jury would have any particular questions about it. During the evidentiary hearing, Loveless testified that he did not request a curative instruction because he believed that would bring more attention to the issue than the statement itself. Similar to the situation in Brown, we conclude that Loveless's performance was not deficient in this regard. However, even if Loveless's performance could be considered *234 deficient, we conclude that it did not so seriously affect the fairness and reliability of the proceedings that our confidence in the jury's verdict of guilt is undermined. Accordingly, the trial court did not err in denying Peterka's claim.
Peterka next contends that Loveless was ineffective during closing argument for failing to take advantage of the physical evidence and thereby conceding the State's theory, for improperly bolstering the State's evidence that Russell had a reputation for peacefulness, for only weakly suggesting that Russell did in fact confront Peterka, and for unreasonably denigrating the importance and persuasiveness of his closing argument by emphasizing that he is Peterka's advocate and is supposed to believe Peterka's statement.
The trial court denied this claim, finding that the "record conclusively demonstrates that trial counsel argued a coherent theory of self-defense, which as testified to by trial counsel during the evidentiary hearing was the theory that the defense was relying on in the trial." Although the trial court's order does not specifically address Peterka's alleged instances of ineffective assistance, we affirm the denial of relief on this claim because Peterka has failed to establish that the alleged errors constitute deficient performance.
First, Peterka's arguments that Loveless (1) failed to take advantage of the physical evidence, thereby conceding the State's theory, (2) improperly bolstered the State's evidence that Russell had a reputation for peacefulness, and (3) only weakly suggested that Russell did confront Peterka, are reiterations of the same issues raised in his previous claims of ineffective assistance. Having concluded that these claims are without merit, we further conclude that counsel's closing argument on these issues does not constitute deficient performance. See Brown, 846 So.2d at 1126 (summarily disposing of claims that counsel was ineffective during closing argument where the claims were "repeats ... of the same issues already raised, only this time based on ineffective assistance of counsel in closing argument").
Second, Peterka has not established that Loveless failed to function as effective counsel by stating in his closing argument that, as Peterka's advocate, he is supposed to believe Peterka's version of events. Cf. Clark v. State, 690 So.2d 1280, 1283 (Fla.1997) ("[C]ounsel failed to function reasonably as ... effective counsel when he indicated his own doubts or distaste for the case and when he attacked Clark's character and emphasized the seriousness of the crime."). Peterka points to the following portion of Loveless's argument to support his claim:
Throughout the preparation for this trial we are depending on the testimony or statements of a particular witness to determine what the facts are to determine strategy at trial. Dan has said all along, describe[d] what happened. In preparing for it, I am Dan's advocate. I am supposed to believe him. That's my job. Even if I didn't want to, that's my job. I am going to do that.
However, directly after making the above statement, Loveless continued:
Even in those situations, occasionally even a defense attorney has a problem, particularly in a situation like how do you rectify an angle of a bullet from what your client told you or his basic statement that he made on video tape with what the doctor tells me? You get in court and all of here sudden you find out it's true.
Thus, when read in context it is apparent that Loveless was emphasizing that he believed Peterka's version of events despite the medical examiner's deposition testimony *235 regarding the angle of the bullet and that his belief turned out to be well founded in light of the medical examiner's changed opinion on this issue at trial. Thus, Loveless's performance during his closing argument was not deficient and the trial court did not err in denying Peterka relief on this claim.
In his last claim of ineffective assistance during the guilt phase, Peterka argues that trial counsel were ineffective for failing to object to the following comment made by the prosecutor during closing:
I've got a lot of points. There is not just one point. I've told you all of them. I've done everything I can do. I've showed you all of the evidence that I can bring in here to you. It proves Dan Peterka is guilty beyond any reasonable doubt. The evidence casts away any reasonable doubt.
(Emphasis supplied.) Peterka asserts that this comment implied that there was evidence of Peterka's guilt that was not presented to the jury. The trial court denied Peterka's claim, finding that the prosecutor's closing argument was a fair comment on the evidence and that even if counsel's performance had been deficient, no prejudice resulted due to the overwhelming evidence of guilt presented. We agree.
Although it is improper for the prosecutor to imply that there is additional evidence of a defendant's guilt that was not presented during trial, see Ruiz v. State, 743 So.2d 1, 4 (Fla.1999), the prosecutor did not make such an implication in this case. Contrary to Peterka's characterization of the comment, we conclude that the prosecutor was merely stating that he had presented the jury with all of the State's evidence, which he believed proved first-degree premeditated murder. Cf. Stewart v. State, 622 So.2d 51, 56 (Fla. 5th DCA 1993) (holding that the prosecutor's comment that "during the next phase we'll get into more of the proof, the discussion of why he actually did it" was improper and prejudicial because it clearly suggested that the State had additional evidence that it had not provided the jury). Thus, trial counsel were not ineffective for failing to object and the trial court did not err in denying relief on this claim.

B. Right to Testify
In Peterka's second issue on appeal, he contends that the trial court erred in denying his claim that Loveless was ineffective for failing to advise him of his right to testify during the guilt phase. In denying this claim, the trial court found Loveless credible when he testified that he and Peterka discussed Peterka's right to testify at trial, and rejected Peterka's assertion in his postconviction motion that he was not advised of this right.
Loveless testified that he always discusses the right to testify with a defendant and that he advised Peterka not to testify because Peterka's version of events were being introduced by his videotaped statement. Peterka did not testify at the evidentiary hearing and has not produced any evidence to contradict or otherwise undermine the credibility of Loveless's testimony. Therefore, Peterka's claim that Loveless was ineffective for not informing him of his right to testify during the guilt phase is contrary to the evidence presented on the issue. Further, to the extent Peterka relies on the fact that there is no on-the-record waiver of his right to testify to support his claim of ineffective assistance of counsel, this Court has rejected the argument that an on-the-record waiver is required. See Davis v. State, 875 So.2d 359, 368-69 (Fla.2003); Lawrence v. State, 831 So.2d 121, 132 (Fla.2002), cert. denied, 538 U.S. 926, 123 S.Ct. 1575, 155 L.Ed.2d *236 319 (2003). Accordingly, we affirm the trial court's denial of relief on this claim.

C. Penalty Phase
Peterka next argues that the trial court erred in denying five claims of ineffective assistance of counsel during the penalty phase. In his first three claims, Peterka asserts that trial counsel were ineffective for failing to investigate and present mitigating evidence of (1) Peterka's military service, including commendations received, (2) Peterka's good behavior during pretrial detention, and (3) Peterka's relationships with family members, good, helpful nature, and nonviolent past. We conclude that the trial court did not err in denying Peterka relief on these three claims.
When evaluating claims that counsel was ineffective for failing to present mitigating evidence, the defendant has the burden of showing that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Asay v. State, 769 So.2d 974, 985 (Fla.2000). However, this Court has recognized that "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002). "[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Ragsdale v. State, 798 So.2d 713, 716 (Fla.2001) (quoting State v. Riechmann, 777 So.2d 342, 350 (Fla.2000)) (alteration in original).
The United States Supreme Court recently reaffirmed the importance of a thorough investigation by defense counsel into mitigating factors in Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003):
[The] principal concern in deciding whether [counsel] exercised "reasonable professional judgmen[t]" is not whether counsel should have presented a mitigation case. Rather, [the] focus [is] on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable. In assessing counsel's investigation, [the Court] must conduct an objective review of their performance, measured for "reasonableness under prevailing professional norms," which includes a context-dependent consideration of the challenged conduct as seen "from counsel's perspective at the time," [Strickland], at 689, 104 S.Ct. 2052 ("[E]very effort [must] be made to eliminate the distorting effects of hindsight").
539 U.S. at 522-23, 123 S.Ct. 2527 (some citations omitted). The Court in Wiggins noted that efforts should be made to discover available mitigating evidence and evidence to rebut any aggravating evidence from such sources as "medical history, educational history, employment and training history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influence." Id. at 223, 123 S.Ct. 2527 (citing ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases 11.8.6, at 133 (1989)).
In denying Peterka's claim that trial counsel were ineffective for failing to investigate and present evidence of his military background, the trial court found that Assistant Public Defender Harlee, who was responsible for the presentation of the penalty phase defense at trial, made a reasoned tactical decision not to present Peterka's military background and that Peterka was not prejudiced by the omission of this evidence in light of the aggravating and mitigating factors that were presented during the penalty phase. We agree.
*237 Although Peterka testified at the evidentiary hearing that he was never asked about his military record, Harlee testified that he believed he had been apprised of Peterka's military service, and both Loveless and Investigator Graham testified that they knew Peterka had military experience. Moreover, both Graham and Loveless testified that the penalty phase form used by the Public Defender's Office in the regular course of business in 1989 had a space for military background. Thus, there is competent, substantial evidence to support the trial court's finding that trial counsel asked Peterka about and was aware of Peterka's military history.
There is also competent, substantial evidence to support the trial court's finding that trial counsel made a reasoned tactical decision not to present this evidence in mitigation. Harlee testified that in this case there was a "negative" side to the military service mitigation because Peterka's illegal conduct led to his discharge from the National Guard. Harlee believed that because the trial was being held in "a very heavy military area," Peterka's conduct could be viewed as "besmirching the name of the military." Fearing that the prosecutor would "come back and destroy" it if Peterka's military service was highlighted, Harlee decided not to pursue this mitigation. Thus, Harlee's tactical decision not to focus on Peterka's military service as a mitigating circumstance was not deficient performance.
However, even if Harlee's performance could be considered deficient, we conclude that Peterka has failed to established prejudice. Military service is not strong mitigation, especially when weighed against the CCP, avoid arrest, and under sentence of imprisonment aggravators. We conclude that Peterka has failed to establish that he has been deprived of a reliable penalty phase.
The trial court also denied Peterka's claim that trial counsel were ineffective for failing to present mitigating evidence of Peterka's good behavior in jail and his refusal to participate in an escape. Without deciding whether counsel's performance was deficient in this regard, we conclude that Peterka has failed to establish the prejudice prong of Strickland. See Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001) ("[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong."). In light of the three valid aggravating circumstances found by the trial court, this additional good behavior mitigation, even considered with the mitigation that Peterka had no significant criminal history, does not undermine our confidence in the outcome in this case. Thus, the trial court did not err in denying this claim.
We also conclude that there is no error in the trial court's denial of Peterka's claim that trial counsel were ineffective for failing to present evidence of his relationships with his family, his good, helpful nature, and his nonviolent past. In denying this claim, the trial court found that
the jury was presented all the evidence that the Defendant asserts his counsel failed to present and the evidence was presented in an effective manner. The Defendant has not established that his trial counsel's performance was deficient nor has he established that the outcome of the penalty phase would have been different.
The record supports the trial court's finding that much of the evidence presented at the evidentiary hearing was cumulative to the evidence presented by counsel at trial. Further, Peterka's father was unable to testify at trial because he was having symptoms of a heart attack during *238 that time and Peterka's mother testified at the evidentiary hearing that she would not have wanted Peterka's siblings exposed to the trial because of their ages at that time. Thus, trial counsel were not ineffective for failing to have these witnesses testify.
In his next claim of ineffective assistance of counsel during the penalty phase, Peterka asserts that Harlee was ineffective for failing to prevent the State from eliciting testimony about Peterka's juvenile record from Peterka's mother on cross-examination. During direct examination, Peterka's mother testified that Peterka was close to his family, helped other people and had "good" to give and share. On cross-examination, the State questioned Peterka's mother about whether Peterka was arrested multiple times for burglary when he was a teenager and adjudicated delinquent. In response to the trial court's inquiry at sidebar, the State admitted not having certified copies of convictions of the juvenile offenses but indicated that Peterka's adult records included a determination that he had been adjudicated delinquent. The trial court overruled Harlee's objection to this line of questioning, finding that Peterka had opened the door to questions about his juvenile record by placing his character at issue through his mother's testimony that he was a loving, caring child.
The postconviction trial court denied Peterka's ineffective assistance of counsel claim, finding that Peterka raised this issue on direct appeal and "[w]hile the Florida Supreme Court held that the issue had not been preserved for appeal, it went on to hold that the trial court had committed error in allowing the state's cross-examination, [but] the error was harmless." As the postconviction court noted, on direct appeal, this Court found the error to be harmless beyond a reasonable doubt. See Peterka, 640 So.2d at 70 ("Although the record does not support the trial court's ruling that defense counsel opened the door for the State to offer rebuttal evidence of Peterka's character, the error was harmless."). Thus, Peterka cannot establish prejudice. See Vining v. State, 827 So.2d 201, 214 (Fla.2002) (concluding that the defendant could not establish prejudice from trial counsel's failure to object to the CCP instruction where the Court held that the trial court's error in finding CCP was harmless beyond a reasonable doubt). Accordingly, we affirm the trial court's denial of relief on this claim.
In Peterka's final claim of ineffective assistance of counsel during the penalty phase, he asserts that trial counsel were ineffective for failing to challenge or minimize the aggravating circumstances argued by the State. With respect to Peterka's contention that trial counsel should have objected to the applicability of the aggravating circumstances or to the specific instructions given, the trial court found this claim procedurally barred because it was or should have been raised on direct appeal. We agree.
Peterka challenged the applicability of the aggravating circumstances on direct appeal. See Peterka, 640 So.2d at 70-71. This Court concluded that the evidence supported the trial court's finding that Peterka committed the murder to avoid lawful arrest, while under a sentence of imprisonment, and in a cold, calculated, and premeditated manner without pretense of moral or legal justification. See id. at 71. However, we also concluded that the trial court erred in finding the "hinder law enforcement" and "pecuniary gain" aggravating circumstances. See id. Peterka cannot seek a second appeal of theses issues by couching them as ineffective assistance of counsel claims. See, e.g., Schwab v. State, 814 So.2d 402, 413 (Fla.2002).
*239 As to Peterka's claim that trial counsel were ineffective for failing to present evidence to minimize the aggravating circumstances, the only specific evidence Peterka argues that trial counsel should have presented to rebut the aggravating circumstances was that Peterka did not escape from jail but rather failed to report to jail. However, contrary to Peterka's allegation, this evidence was put before both the trial judge and the jury when Cindy Rush testified that she tried to convince Peterka to report to prison to serve his sentence but that he was scared and wanted to go somewhere to reestablish himself. Thus, counsel's performance was not deficient in this regard and the trial court did not err in denying this claim.

D. Voir Dire
In Peterka's final ineffective assistance of counsel claim, he argues that Loveless was ineffective during voir dire for (1) failing to challenge several jurors for cause, (2) failing to question the prospective jurors about their knowledge of firearms, opinions regarding Peterka's reasons for fleeing Nebraska, and understanding of reasonable doubt, and (3) failing to object when the trial court provided two jurors with improper definitions of aggravating and mitigating circumstances. With regard to challenging jurors for cause, we have explained that
[t]he test for determining juror competency is whether the juror can set aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court. A juror must be excused for cause if any reasonable doubt exists as to whether the juror possesses an impartial state of mind.... In a death penalty case, a juror is only unqualified based on his or her views on capital punishment, if he or she expresses an unyielding conviction and rigidity toward the death penalty.
Barnhill v. State, 834 So.2d 836, 844 (Fla.2002) (citations omitted), cert. denied, 539 U.S. 917, 123 S.Ct. 2281, 156 L.Ed.2d 134 (2003). After having reviewed the record, we affirm the trial court's denial of relief on this claim. None of the jurors Peterka argues trial counsel should have challenged for cause either indicated that they could not set aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court, or expressed an unyielding conviction and rigidity toward the death penalty. Thus, Loveless's failure to challenge these jurors for cause was not deficient performance.
As to Peterka's claim that trial counsel failed to question the prospective jurors about their knowledge of firearms, their views regarding Peterka's reasons for fleeing Nebraska, and their understanding of reasonable doubt, the trial court denied these claims, stating:
In Claims C(1)(i) and (k), the Defendant alleges that trial counsel failed to question prospective jurors about their understanding of intent, premeditation, and their attitudes toward the factual circumstances of the case, as well as, failed to inquire as to their understanding of burden of proof and reasonable doubt. Defendant's trial counsel made a tactical decision as to how to best conduct voir dire in this case and was not ineffective in his voir dire examination.
As to Claim C(1)(j), the Defendant alleges deficient performance of trial counsel for failing to inquire into the prospective jurors' opinions about Mr. Peterka's motive for fleeing Nebraska. Again, trial counsel was not deficient in his performance. The Defendant's trial counsel made a reasoned tactical decision not to inquire about the prospective *240 jurors' opinions regarding the Defendant's motive for fleeing Nebraska for the reason that there were motions in limine pending to keep this information out of evidence; thus, trial counsel did not want to bring it to the attention of the jurors.
The trial court's findings are supported by competent, substantial evidence.
Although Assistant Public Defender Loveless testified at the evidentiary hearing that he did not have an independent recollection of the voir dire proceedings in this case, he believed that he did not extensively question jurors about reasonable doubt because the State usually covered this area and he would only try to clarify issues if he felt it was necessary. A review of the voir dire proceedings in this case supports Loveless's testimony. The prosecutor consistently asked potential jurors about the State's burden of proof being reasonable doubt.
With respect to Peterka's reason for leaving Nebraska, Loveless testified that he did not question jurors about this issue because there were a number of pending motions in limine to keep this information out of the trial. As to the issue of firearms, Loveless testified that he probably did not question jurors about this issue because he felt that jurors who own firearms are the type that would agree with a self-defense theory but jurors who do not own firearms would be better penalty phase jurors. Thus, Loveless felt that he broke even with regard to the issue of firearm ownership. Based on the record and postconviction testimony, we conclude that the trial court correctly found these decisions to be reasoned tactical decisions and not deficient performance.
Lastly, Peterka contends that trial counsel were ineffective for failing to object when the trial court provided two jurors with improper definitions of aggravating and mitigating circumstances. The trial court found that
[a]gain, the record conclusively demonstrates that the Defendant is entitled to no relief on this claim. The prosecutor told juror King that the Court would instruct the jury as to what things could be considered as an aggravating circumstance and she indicated that she would follow the law. Moreover, the trial court did properly instruct the jury during the penalty phase.
Claim C(1)(g) alleging ineffective assistance of counsel for failing to challenge juror Martin for cause is conclusively refuted by the record. The prosecutor explained to Juror Martin that the judge would give a list of what aggravating circumstances existed in this case and she stated that she understood and could follow the law.
The trial court's findings are supported by competent, substantial evidence in the record. Further, even if Loveless's performance could be considered deficient for failing to clarify the definitions of aggravating and mitigating circumstances, Peterka cannot establish prejudice because the jury was properly instructed during the penalty phase on the specific aggravating circumstances they could consider. Thus, we also affirm the trial court's denial of relief on this claim.

II. Evidentiary Rulings during the Evidentiary Hearing
In Peterka's fifth issue on appeal he asserts that he was denied due process during the evidentiary hearing when the trial court improperly limited the testimony of his mother and brother. This Court addressed a similar claim in Asay, in which the defendant asserted that the trial court erred in limiting the testimony of some of his siblings concerning mitigation evidence not presented during the penalty phase. *241 See 769 So.2d at 981. Noting that "trial courts have wide latitude to regulate proceedings before them in order that the administration of justice be speedily and fairly achieved in an orderly, dignified manner," we held that the trial court had not abused its discretion in limiting this testimony. Id. (internal quotation marks omitted). In this case, we similarly conclude that the trial court did not abuse its discretion in limiting the testimony of Peterka's mother and brother.
With respect to Peterka's mother, the trial court did not prohibit Peterka from presenting testimony that was not presented at trial. Rather, the trial court expressed its opinion that the testimony regarding Peterka's relationship with his family and responsibilities while growing up appeared to be cumulative to what was presented at trial. Postconviction counsel agreed to move on and Mrs. Peterka was permitted to testify that trial counsel did not ask her about specific instances of Peterka's conduct over his life and did not give her instructions or advice on how to testify. Mrs. Peterka also testified about some of the responsibilities Peterka was given with regard to his younger siblings and that Peterka had never been violent growing up. Moreover, the trial court held the prosecutor to the same standard on cross-examination, suggesting that he move on when he began questioning Mrs. Peterka about things she testified to at trial.
With respect to Peterka's brother, the State objected to his testimony about the meaning of the Minnesota National Guard commendation Peterka received. The trial court found that Peterka's brother, who was a sergeant in the Marine Corps, was not an expert in Minnesota National Guard commendations and, therefore, could not testify about their significance. The trial court further found that the document, which was admitted into evidence, spoke for itself. After reviewing the trial and postconviction record, we conclude that Peterka has failed to demonstrate that the trial court abused its discretion in limiting the testimony of either his mother or brother.

III. Ineffective Assistance of Postconviction Counsel
In his final issue on appeal, Peterka argues that he was denied due process during his postconviction proceedings because of postconviction counsel's failure to both present sufficient evidence to support the claims raised and raise other meritorious claims. To the extent that Peterka asserts a claim of ineffective assistance of postconviction counsel, we have held that this is not a valid basis for relief. See King v. State, 808 So.2d 1237, 1245 (Fla.2002) (stating that the claim that initial postconviction counsel was ineffective did not state a valid basis for relief). We further conclude that Peterka has not established in this case that the alleged errors of prior postconviction counsel rise to the level of a constitutional due process violation. Accordingly, we deny this claim for relief.

PETITION FOR WRIT OF HABEAS CORPUS
In his petition for a writ of habeas corpus, Peterka raises seven claims of ineffective assistance of appellate counsel. Peterka also asserts that he is entitled to relief under the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). We address each of these issues separately below.

I. Ineffective Assistance of Appellate Counsel
"The criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial *242 counsel." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985); see also Valle v. Moore, 837 So.2d 905, 907 (Fla.2002). Thus, the Court must consider
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)). In Valle, we explained that
appellate counsel cannot be considered ineffective under this standard for failing to raise issues that were not properly raised during the trial court proceedings and do not present a question of fundamental error. See Rutherford, 774 So.2d at 643. The same is true for claims without merit because appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal. See id. In fact, appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue. See Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) (appellate counsel not required to argue all nonfrivolous issues, even at request of client); Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990) (noting that "it is well established that counsel need not raise every nonfrivolous issue revealed by the record"). Finally, a claim that has been resolved in a previous review of the case is barred as "the law of the case." See Mills v. State, 603 So.2d 482, 486 (Fla.1992).
837 So.2d at 907-08 (parallel citations omitted). It is within this legal framework that we analyze Peterka's claims of ineffective assistance of appellate counsel.

A. Motion to Suppress
Peterka first asserts that appellate counsel was ineffective for failing to raise a claim that the trial court erred in denying the motion to suppress evidence seized from Peterka's residence as a result of a warrantless search directly after his arrest in the early morning hours of July 14, 1989, and in a subsequent warrantless search on the afternoon of July 14. This Court has explained the proper analysis to apply when appellate counsel fails to raise an issue that was properly preserved by objection at trial:
With regard to evidentiary objections which trial counsel made during the trial and which appellate counsel did not raise on direct appeal, this Court evaluates the prejudice or second prong of the Strickland test first. In doing so, we begin our review of the prejudice prong by examining the specific objection made by trial counsel for harmful error. A successful petition must demonstrate that the erroneous ruling prejudiced the petitioner. If we conclude that the trial court's ruling was not erroneous, then it naturally follows that habeas petitioner was not prejudiced on account of appellate counsel's failure to raise that issue. If we do conclude that the trial court's evidentiary ruling was erroneous, we then consider whether such error is harmful error. If that error was harmless, the petitioner likewise would not have been prejudiced.
Jones v. Moore, 794 So.2d 579, 583-84 (Fla.2001). Because we conclude that the trial court did not err in denying the motion *243 to suppress, we deny Peterka's ineffective assistance of appellate counsel claim.
Although warrantless searches and seizures are generally prohibited by the Fourth Amendment to the United States Constitution and article I, section 12 of the Florida Constitution, police may conduct a search without a warrant if consent is given or if the individual has abandoned his or her interest in the property in question. See Jorgenson v. State, 714 So.2d 423, 426 (Fla.1998) (stating that although a "warrantless search is per se unreasonable under the Fourth Amendment,... [such] a search will be considered lawful if conducted pursuant to consent which was given freely and voluntarily"); Jones v. State, 648 So.2d 669, 675 (Fla.1994) (holding that search and seizure of defendant's clothes violated the Fourth Amendment where the defendant did not voluntarily abandon his clothes); Maxwell v. State, 443 So.2d 967, 969 (Fla.1983) (holding that suitcase seized from a bus did not violate the defendant's Fourth Amendment rights when the defendant did not claim the suitcase and thus abandoned "all possessory interests and expectations of privacy in the suitcase"). In this case, the trial court denied Peterka's motion to suppress, finding that Peterka consented to the search conducted immediately following his arrest and that Peterka had no reasonable expectation of privacy in the residence at the time of the second search on the afternoon of July 14 because he had abandoned the premises. Both of these findings are supported by the record. The trial court did not err in denying the motion to suppress.
Because the trial court did not err in denying Peterka's motion to suppress, Peterka was not prejudiced by appellate counsel's failure to raise this issue on direct appeal. Accordingly, we deny this claim for relief.

B. Improper Prosecutorial Comments
Peterka next claims that appellate counsel was ineffective for failing to raise several instances of alleged improper prosecutorial comments during closing argument even though no objection was raised at trial. Generally, appellate counsel cannot be ineffective for failing to raise claims which were not preserved. See, e.g., Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996) ("[A]ppellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object."); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding appellate counsel was not ineffective in failing to raise allegedly improper comments by the prosecutor which were not preserved for appeal by objection). One exception to this general rule is where the unobjected to comments rise to the level of fundamental error. See Owen v. Crosby, 854 So.2d 182 (Fla.2003). Fundamental error is error that reaches "down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Spencer v. State, 842 So.2d 52, 74 (Fla.2003) (quoting Brown v. State, 124 So.2d 481, 484 (Fla.1960)). In order for improper comments made in the closing argument of a penalty phase to constitute fundamental error, they "must be so prejudicial as to taint the jury's recommended sentence." Fennie v. State, 855 So.2d 597, 609 (Fla.2003) (quoting Thomas v. State, 748 So.2d 970, 985 n. 10 (1999)). We have reviewed the numerous prosecutorial comments that Peterka asserts were improper and conclude that none rise to the level of fundamental error. We therefore deny Peterka's claim that appellate counsel rendered ineffective assistance *244 of counsel in failing to raise these issues on appeal.

C. Admission of Crime Scene Photograph and the Victim's Skull
In Peterka's third claim of ineffective assistance of appellate counsel, he contends that appellate counsel was ineffective for failing to raise as error the admission of a gruesome, prejudicial crime-scene photograph and the admission of the victim's skull. Because we conclude that these issues are without merit, Peterka cannot establish that he was prejudiced by counsel's failure to raise these issues on direct appeal.

D. Victim's Reputation for Peacefulness
Peterka next asserts that appellate counsel was ineffective for failing to raise as error the admission of evidence of Russell's reputation for peacefulness. Three witnesses, Kevin Trently, Deborah Trently, and Gary Johnson, testified at trial that Russell had a reputation for peacefulness. Trial counsel objected each time the State attempted to elicit this testimony. We conclude that the trial court erred in allowing evidence of Russell's reputation for peacefulness to be presented to the jury. However, we further conclude that this error was harmless and, therefore, that Peterka was not prejudiced by appellate counsel's failure to raise this issue on direct appeal. See Jones, 794 So.2d at 584.
The admissibility of character evidence is governed by section 90.404, Florida Statutes (2003). Section 90.404(1)(b)(2) provides that evidence of a victim's character trait of peacefulness is admissible when "offered by the prosecution in a homicide case to rebut evidence that the victim was the aggressor." In this case, the State elicited the testimony regarding Russell's reputation for peacefulness prior to its presentation of Peterka's statement that Russell initiated a physical confrontation. Thus, this evidence could not have been used to rebut evidence that Russell was the aggressor. Cf. Taylor v. State, 855 So.2d 1, 20 n. 21 (Fla.2003) ("[A] victim-declarant's statements cannot be admitted during the State's case-in-chief to rebut evidence or testimony that has not been introduced by the defense."), cert. denied, ___ U.S. ___, 124 S.Ct. 1605, 158 L.Ed.2d 248 (2004).
Further, Peterka's taped statement was introduced by the State, not by Peterka. In Stoll v. State, 762 So.2d 870, 875 (Fla.2000), we rejected the State's argument that a witness's testimony as to the victim's state of mind was relevant to rebut the defendant's taped statements introduced by the State in its case-in-chief. We held that the "State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered." Id. We recognize that Stoll had not been decided at the time that Peterka's direct appeal was filed in 1990. However, the citation in Stoll to the Fourth District's 1988 decision in Brown v. State, 524 So.2d 730, 731 (Fla. 4th DCA 1988), indicates that this argument was one that appellate counsel should have been aware of at that time.
Nevertheless, we do not decide whether this oversight renders counsel's performance deficient because we conclude that there was no prejudice. During its case-in-chief, the State also presented evidence that Russell did not intend to confront Peterka about the stolen money order because he was afraid of Peterka's gun and that Russell intended to let the police handle the matter. Appellate counsel raised the admission of this evidence as error on direct appeal but this Court held that there was no error in admitting this *245 testimony. See Peterka, 640 So.2d at 69. Because the admissible evidence that Russell stated he was not going to confront Peterka is much stronger evidence that Russell did not initiate the altercation with Peterka than the evidence of Russell's reputation for peacefulness, the erroneous admission of Russell's reputation for peacefulness was harmless. Thus, Peterka cannot establish prejudice and is not entitled to relief on this claim.

E. Aggravating Circumstances
In his fifth ineffective assistance of appellate counsel claim, Peterka asserts that appellate counsel was ineffective for failing to raise several issues regarding the aggravating circumstances instructed on and found by the trial court. Peterka first argues that appellate counsel was ineffective for failing to assert that the trial judge misinformed jurors during voir dire about the nature of aggravating and mitigating circumstances. However, trial counsel did not object to the trial court's comments. Thus, this issue was not preserved for review. Further, in light of our conclusion that trial counsel were not ineffective for failing to object to the trial court's characterization of aggravating and mitigating circumstances, we conclude that appellate counsel was not ineffective for failing to raise this issue on appeal as fundamental error.
Peterka next argues that appellate counsel was ineffective for failing to raise the improper consideration by the jury and the trial judge of both the "avoid lawful arrest" and "hinder a governmental function" aggravators. However, appellate counsel did argue on appeal that the trial court erred in finding both of these aggravating circumstances. This Court agreed that this constituted an impermissible doubling but found the error to be harmless. See Peterka, 640 So.2d at 71-72. Thus, Peterka's ineffective assistance of appellate counsel claim on this issue is without merit.
Lastly, Peterka asserts that appellate counsel was ineffective for failing to raise the issue that the jury instructions on the avoid arrest, pecuniary gain, and CCP aggravators were unconstitutionally vague. Although trial counsel objected to the applicability of the avoid arrest and pecuniary gain aggravators, trial counsel did not object to the instructions on these aggravators as unconstitutionally vague. As to CCP, trial counsel did file a motion objecting to the CCP aggravator on vagueness grounds but trial counsel did not renew the objection at the penalty phase charge conference or specifically object to the language of the jury instruction submitted by the State.
In Pace v. State, 854 So.2d 167, 180-81 (Fla.2003), cert. denied, ___ U.S. ___, 124 S.Ct. 1155, 157 L.Ed.2d 1049 (2004), we rejected a similar claim of ineffective assistance of appellate counsel. In concluding that Pace's appellate counsel was not ineffective for failing to challenge the CCP instruction as unconstitutionally vague, we noted that the issue was not properly preserved for review, that Pace did not assert that the erroneous CCP instruction was fundamental error, and that this Court had previously held that vagueness challenges to the CCP instruction "are procedurally barred unless `[t]he objection at trial [attacks] the instruction itself, either by submitting a limiting instruction or making an objection to the instruction as worded.'" Id. at 181 (quoting Pope v. State, 702 So.2d 221, 223-24 (Fla.1997)) (alterations in original). These same circumstances are present in Peterka's case. Accordingly, we deny Peterka relief on this claim.

F. Hearsay Evidence
In his last two claims of ineffective assistance of appellate counsel, Peterka *246 asserts that appellate counsel was ineffective for failing to adequately present his claims that the trial court erred in admitting hearsay evidence that Peterka was considered "armed and dangerous" and that Russell was afraid of Peterka's gun. Peterka admits that these issues were raised on direct appeal but asks the Court to reconsider them. In Rutherford v. Moore, 774 So.2d 637, 645 (Fla.2000), we held that "if an issue was actually raised on direct appeal, the Court will not consider a claim that appellate counsel was ineffective for failing to raise additional arguments in support of the claim on appeal." Accordingly, we decline to address these issues.

II. Ring v. Arizona

In his final habeas claim, Peterka asserts that the United States Supreme Court decision in Ring renders Florida's capital sentencing statute, section 921.141, Florida Statutes (2003), unconstitutional. In Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1069, 123 S.Ct. 662, 154 L.Ed.2d 563 (2002), this Court denied relief under Ring. Subsequently, this Court has rejected postconviction challenges to section 921.141 that relied on Ring. See, e.g., Wright v. State, 857 So.2d 861, 877-78 (Fla.2003); Jones v. State, 855 So.2d 611, 619 (Fla.2003); Chandler v. State, 848 So.2d 1031, 1034 n. 4 (Fla.2003). Moreover, we note that Peterka stipulated that he was under a sentence of imprisonment when the murder occurred, thereby relieving the State of its burden of proof with regard to this aggravating circumstance. Cf. Brown v. State, 719 So.2d 882, 889 (Fla.1998) ("[T]he defendant's stipulation of convicted felon status satisfies the prosecution's burden of proof for that element of the crime."); Agan v. State, 503 So.2d 1254, 1256 (Fla.1987) (indicating that the defendant's stipulation to aggravating circumstances relieved the State of its burden of proof). Thus, we deny this claim for relief.

CONCLUSION
For the reasons discussed, we affirm the trial court's denial of Peterka's motion for postconviction relief and deny Peterka's petition for writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO and BELL, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
[2] The trial court found the following five aggravating circumstances: (1) the murder was committed while Peterka was under a sentence of imprisonment; (2) the murder was committed for the purpose of avoiding or preventing lawful arrest; (3) the murder was committed for pecuniary gain; (4) the murder was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; and (5) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See Peterka, 640 So.2d at 65. In mitigation, the trial court found the statutory mitigator that Peterka had no significant history of prior criminal activity but found no nonstatutory mitigation. See id.
[3] These issues were that the trial court erred by (1) excusing for cause prospective juror Piccorossi because of his personal opposition to the death penalty; (2) denying Peterka's motion to suppress his statements to the police; (3) denying Peterka's motion for judgment of acquittal based upon insufficient evidence of premeditation; (4) admitting hearsay evidence that Peterka had fled Nebraska and was considered "armed and dangerous"; (5) admitting testimony that Russell suspected Peterka of stealing the money order and that Russell intended to let the police handle the matter; (6) admitting into evidence a photograph of Russell's skull; (7) entering a sentencing order that lacked clarity; (8) finding the aggravating factor that the homicide was committed to disrupt or hinder the lawful exercise of a governmental function or the enforcement of laws; (9) finding that the murder was committed for pecuniary gain; (10) referring to other "mitigating circumstances" in the sentencing order without stating what they were or why they did not amount to mitigation as required by Campbell v. State, 571 So.2d 415 (Fla.1990); (11) allowing the State, during cross-examination of Peterka's mother at the penalty phase, to allege that Peterka had an extensive juvenile record; and (12) partially denying Peterka's motion to suppress his statements because his requests for assistance of counsel were ignored.
[4] These claims were: (1) trial counsel were ineffective during voir dire; (2) trial counsel were ineffective during the guilt phase for (a) conceding Peterka's guilt during opening statements, (b) failing to adequately object to the State's presentation of evidence of Russell's reputation for peacefulness, (c) failing to investigate and present evidence of the full extent of Russell's poor financial situation, (d) failing to object to a State witness speaking to an individual who sat in the courtroom during other testimony, (e) failing to prevent suppressed evidence from reaching the jury, (f) failing to take advantage of the opportunity provided by the firearms expert to demonstrate the plausibility of Peterka's version of the shooting, (g) failing to independently investigate the medical examiner's opinion that the gunshot wound was a contact wound, (h) failing to question the medical examiner about deposition testimony that was consistent with Peterka's version of the shooting, (i) failing to elicit information from the medical examiner that no tests had been conducted to support his opinion that the residue found on the skull was gun powder, (j) failing to object to the medical examiner's lack of qualification as a expert to testify as to how the shooting occurred, (k) failing to undermine the State's hearsay evidence that Russell was not going to confront Peterka about the stolen money order, (l) failing to present a defense case, and (m) making numerous errors during closing argument; (3) trial counsel were ineffective in failing to properly advise Peterka of his right to testify; (4) trial counsel were ineffective during the penalty phase for (a) failing to present available witnesses to offer mitigating evidence, including that Peterka was a "model prisoner," (b) failing to present evidence of Peterka's record of service in the Minnesota National Guard, (c) failing to investigate and present evidence of Peterka's character trait for peacefulness, (d) failing to object to vague and inadequate jury instructions regarding the aggravating circumstances, (e) failing to investigate and prepare evidence to rebut or lessen the weight of these factors, (f) failing to present evidence that Peterka refused to participate in a successful escape plan executed by three of his cellmates, and (g) failing to properly object to the State's cross-examination of Peterka's mother regarding unverified prior juvenile convictions; (5) the death sentence imposed on Peterka is unconstitutional because the jury was allowed to consider aggravating circumstances that were erroneously admitted; and (6) the trial court failed to give weight to proven mitigation.
[5] Huff v. State, 622 So.2d 982, 983 (Fla.1993) (holding that the judge must conduct a preliminary hearing on an initial 3.850 motion for the purpose of determining whether an evidentiary hearing is required and to hear legal argument relating to the motion).
[6] These issues are: (1) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during the guilt phase; (2) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective in failing to advise Peterka of his right to testify; (3) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during the penalty phase; (4) whether the trial court erred in denying Peterka's claim that trial counsel were ineffective during voir dire; (5) whether Peterka was denied due process during the postconviction evidentiary hearing; and (6) whether Peterka was denied due process by postconviction counsel's failure to investigate and present evidence supporting his claims for relief.
[7] These claims are: (1) Peterka is entitled to relief under the United States Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (2) appellate counsel was ineffective for failing to raise the trial court's denial of Peterka's motion to suppress evidence seized from his residence; (3) appellate counsel was ineffective for failing to raise issues regarding the prosecutor's arguments; (4) appellate counsel was ineffective for failing to raise the admission of crime scene photographs; (5) appellate counsel was ineffective for failing to raise the admission of evidence of Russell's character; (6) appellate counsel was ineffective for failing to raise that the jury was improperly instructed on and the trial court improperly considered invalid aggravating circumstances; (7) appellate counsel was ineffective for failing to adequately present Peterka's claim that the trial court erred in admitting hearsay evidence that Peterka was considered "armed and dangerous"; and (8) appellate counsel was ineffective for failing to adequately present Peterka's claim that the trial court erred in admitting hearsay testimony that Russell was afraid of Peterka's gun.
[8] Dr. Kielman stated that the gun was no more than one-half to three-quarters of an inch away from Russell's head.