952 So.2d 470 (2006)
Eric Scott BRANCH, Appellant,
v.
STATE of Florida, Appellee.
Eric Scott Branch, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC05-1558, SC05-433.
Supreme Court of Florida.
August 31, 2006.
Rehearing Denied March 12, 2007.
*473 Michael P. Reiter, Tallahassee, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Cassandra K. Dolgin, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Eric Scott Branch, a prisoner under a sentence of death for a conviction of first-degree murder, appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. After review, we affirm the denial of relief and deny the petition for writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
The underlying facts of the case are set out in this Court's decision in Branch's direct appeal:
Eric Branch was wanted by police in Indiana and because the car he was driving, a Pontiac, could be traced to him, he decided to steal a car from the campus of the University of West Florida in Pensacola. When Susan Morris, a young college student, approached her car after attending an evening class, January 11, 1993, Branch accosted her and stole her red Toyota. Morris's nude body was found later in nearby woods; she had been beaten, stomped, sexually assaulted and strangled. She bore numerous bruises and lacerations, both eyes were swollen shut, and a wooden stick was broken off in her vagina. Branch was arrested several days later in Indiana and charged with first-degree murder, sexual battery, and grand theft.
Evidence introduced at trial showed the following: On the night of the murder, a friend saw Branch with a cut hand, which Branch said he had gotten in a bar fight; that same night, Branch was seen on campus wearing a pair of black and white checkered shorts and driving a "smallish red vehicle"; Branch was sighted in Bowling Green, Kentucky, two days later, and Morris's car was recovered the next day in a parking lot there; when Branch was arrested, he had in his possession a pair of black and white checkered shorts stained with his own blood; a bloodstain matching Morris was found on the back of the passenger seat of the red Toyota; when Branch's Pontiac was discovered abandoned in the Pensacola airport parking lot, "medium velocity splatter" bloodstains matching Morris's DNA profile were found on boots and socks inside. Branch testified on his own behalf and was convicted as charged.
Branch v. State, 685 So.2d 1250, 1251-52 (Fla.1996). Branch was convicted by a jury of first-degree murder, sexual battery, and grand theft. The jury returned a death recommendation on the first-degree murder count by a vote of ten to two. *474 The trial court sentenced Branch to death for the murder count, and imposed a life sentence for the sexual battery conviction and five years' incarceration for the grand theft charge. This Court found no error and affirmed Branch's conviction and sentence. Id. at 1253. Branch's petition for writ of certiorari to the United States Supreme Court was denied on May 12, 1997. Branch v. Florida, 520 U.S. 1218, 117 S.Ct. 1709, 137 L.Ed.2d 833 (1997).
Branch filed a shell motion for postconviction relief on May 7, 1998, in order to toll the time periods for federal habeas corpus relief. Subsequently, on April 1, 2003, Branch filed his second amended motion to vacate judgment of conviction, raising fourteen claims for relief.[1] At the Huff[2] hearing on December 8, 2003, the trial court determined that an evidentiary hearing would be held on claims (1), (2), and (3) of the petition. Following the evidentiary hearing, the circuit court denied all claims.[3]

RULE 3.850 APPEAL
Branch argues in this appeal that the postconviction court was in error in not finding that (1) trial counsel was ineffective for failing to file a motion to suppress the items taken from the Pontiac; (2) trial counsel was ineffective for failing to investigate and present sufficient mitigation evidence during the penalty phase; (3) trial counsel was ineffective for failing to hire experts; (4) trial counsel was ineffective for failing to object to the introduction of the abstract of judgment during the penalty phase; (5) trial counsel was ineffective for failing to impeach witnesses; (6) trial counsel was ineffective for failing to investigate for the guilt phase; (7) trial counsel was ineffective for failing to object at the guilt and penalty phases; (8) Branch's Indiana conviction was not a felony under Florida law in order to establish the prior violent felony aggravating circumstance; (9) Branch was entitled to relief based on cumulative error.

Ineffective Assistance of Counsel Claims
In accordance with the United States Supreme Court's decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that two elements must be met in order for ineffective assistance of counsel claims to be successful: (1) the claimant must *475 identify particular acts or omissions of the lawyer that are outside of the broad range of reasonably competent performance under prevailing professional standards and (2) the deficiency shown must be demonstrated to have so affected the proceeding that confidence in the outcome is undermined. See, e.g., Lott v. State, 931 So.2d 807, 815 (Fla.2006); Miller v. State, 926 So.2d 1243, 1249 (Fla.2006).

Motion to Suppress
Initially, Branch contends that trial counsel was ineffective for not filing a motion to suppress evidence seized from the Pontiac Bonnevillea vehicle belonging to Branch's family in Indianathat Branch had been driving in Florida. The trial court denied relief and articulated the facts set out in the police affidavit upon which a search warrant for the vehicle was issued:
1. Susan Morris was reported missing on January 12, 1993;
2. Later that afternoon, the defendant was reported driving Miss Morris's vehicle by his brother, Robert Branch;
3. The defendant had previously been driving the 1982 Pontiac Bonneville in question;
4. That Branch was a fugitive from charges out of Evansville, Indiana, and was also wanted by the Bay County Sheriff's Office for charges of Sexual Battery;
5. Presumably on the afternoon of January 12, 1993, Florida Department of Law Enforcement was dispatched to the Pensacola Airport to investigate an identification of the Pontiac Bonneville in question;
6. The FDLE officer confirmed the identification of the Bonneville and observed that the rear end of the vehicle appeared lower to the ground than the front, consistent with weight being in the trunk;
7. The FDLE officer opened the trunk to determine whether it contained Miss Morris;
8. Miss Morris was not in the trunk;
9. The Bonneville was sealed and transported to the Escambia County Sheriff's Office where it was stored in a secure garage;
10. The only reference to items inside the vehicle prior to the issuance of the search warrant was the sentence "there appeared to be suitcases and clothing throughout the vehicle";
11. Around 5:00 p.m. January 13, 1993, Susan Morris's body was found unclothed and crudely covered with woodland debris; and
12. FDLE believed that evidence existed in the car, to wit: "trace evidence including human blood, hair, fiber, fingerprints, and other trace evidence."
The trial court then explained:
In the instant case, an investigation was clearly ongoing at the time the car had been seized. The trunk had been opened in search of the victim. Although the car was moved to a secure garage, there has been no evidence presented to this Court that it was further searched prior to the issuance of the warrantbeyond the notation of "suitcases and clothing throughout the vehicle" which were presumably in plain view. There certainly was probable cause to support the issuance of the search warrant, which was applied for only a day or two after the car was seized. There is no evidence that the car would have been removed from that lot by the Defendant, who was on the run in Miss Morris' car at the time. The police's alleged misconductthe seizure of the cardid not provide them with any extra evidence that was obtained without a valid search warrant.

*476 The evidence before the Court does not, under a preponderance of the evidence standard, demonstrate that a motion to suppress had the slightest probability of success. The Court does not find persuasive Public Defender Loveless' testimony that he "would expect" to have filed motions to suppress the evidence in question. It was ultimately Mr. Allbritton's opinion that there was not a sufficient legal basis to file such a motion. Based on the testimony given at the evidentiary hearing, the Court's independent review of the record regarding this issue, and the lack of viable substantive evidence to support the defense's allegation, the Court finds that the Defendant has not overcome the strong presumption that counsel provided effective representation regarding this issue. Counsel cannot be ineffective for failing to file a motion which would have been properly denied.
We find no error in the trial court's analysis and we can add little to it.
Branch asserts that his trial counsel, John Allbritton, should have filed a motion to suppress the evidence seized from the Pontiac. Allbritton testified at the evidentiary hearing that he did not believe that there was a sufficient basis for challenging the search and seizure of the Pontiac. Essentially, the trial court found that the circumstances that existed at the time supported both the legality of the seizure and search of the vehicle and defense counsel's opinion that there was no valid basis upon which to challenge the search and seizure.[4] Based on the foregoing circumstances, we conclude that Branch has not demonstrated that the trial court erred in concluding that trial counsel was not ineffective for failing to file a motion to suppress. See Zakrzewski v. State, 866 So.2d 688, 694 (Fla.2003) (holding that counsel is not ineffective for not filing a motion to suppress when he reasonably believes it would be futile).

Investigating and Presenting Mitigation Evidence for the Penalty Phase
Branch argues that trial counsel was ineffective during the penalty phase because of counsel's failure to investigate and present mitigation evidence. In a written order, the trial court denied this claim by concluding that no credible evidence of substantial mitigation value, other than evidence that was presented at the original penalty phase, was presented at the postconviction evidentiary hearing:
The final claim discussed at the evidentiary hearing involved the assertion that counsel was ineffective for failing to present mitigation evidence. However, the defendant failed to show that he suffered positive, specific, and factual prejudice regarding this claim because no evidence of improperly excluded mitigation was presented at the hearing. In its post-hearing memorandum, the defendant claims that his expert found three statutory mitigators:

*477 1. "Extreme Emotional Distress" mitigatorbased upon the Defendant being on the run from law enforcement both in Indiana and Bay County, Florida. That was coupled with the fact that he had consumed a substantial amount of alcohol that evening;
2. "Unable to Conform Actions to the Law" mitigatorbased upon his opinion that the defendant suffered from some personality disorders. That was coupled with the fact that he had consumed a substantial amount of alcohol that evening and was running from the police; and
3. "Substantial Domination of Another" mitigator "may have been present"based upon the size difference between the defendant and the alleged "other Eric."
The idea that counsel was ineffective for failing to present evidence that the defendant was on the run from two separate charges of sexual battery as mitigation is so absurd that the Court finds that the defendant could not have suffered any prejudice as a matter of law. Further, the jury and the Court rejected the story that the defendant had an accomplice, as illustrated in the sentencing order. The defendant's characterization that the expert's testimony proved the defendant could not conform his actions to the law is patently incorrect. In fact, the defendant's expert, Dr. Henry Dee, testified during cross-examination to the exact opposite conclusion on all three of these mitigators:
Q. [by Mr. Pitre] And in this particular instance, based on what you reviewed, there's no clinical diagnosis that the defendant was under any extreme mental or emotional disturbance?

A. [By Dr. Dee] That's correct.

Q. No indication that the defendant was under the duress of any other person?
A. That's correct.
Q. Isn't it true that you found that the defendant was, in facthad the ability, the capacity, to appreciate the criminality of his conduct?
A. Yes.
Q. He had the ability to conform his conduct to the requirements of the law; isn't that also correct?
A. Yes. I think it was impaired but certainly not obliterated.

In light of the testimony elicited during cross-examination, the defendant has not demonstrated that a mental health expert would have provided any significant aid to the defense during mitigation. Since the defendant was not prejudiced by such an omission, the Court need not determine whether counsel's performance was deficient.
In fact, some of the expert's testimony at the evidentiary hearing would have been harmful to defendant's position during the penalty phase. The Court found that the defendant had good personality traits and afforded that mitigator slight weight. Dr. Dee's opinion that the defendant has several antisocial tendencies would have nullified that mitigator while at the same time failing to establish any diagnosable psychological disorder.
Dr. Dee further testified to several events regarding the defendant's life history, including incidents of abuse, abandonment and rejection. That testimony was corroborated at the hearing by Connie Branch. During the penalty phase, the Court found the nonstatutory mitigator of "the defendant had an unstable childhood" in its sentencing order, and afforded that mitigator some weight. Upon reviewing the testimony *478 before it during the penalty and sentencing phases of trial the Court finds that the additional evidence of abuse, rejection or abandonment would not have had a measurable effect on the defendant's sentence. In fact, it would not have given this mitigator any more weight than it was attributed in this Court's order. Therefore, the defendant has failed to demonstrate that he suffered any prejudice regarding this claim.
At the evidentiary hearing, Branch's trial counsel, Allbritton, testified concerning his defense preparation. Trial counsel testified he reviewed everything that was provided to him by former counsel, Chief Assistant Public Defender Earl Loveless, who had done extensive work on the case. He further testified that he spent well over 100 hours on Branch's defense. He spoke with Branch concerning his family background, and while he did not recall specific facts, he concluded that due to Branch's conflict with family members, some would not be helpful witnesses or did not want to testify. Further, he prepared other family members to testify and he presented their testimony to the judge and jury. He specifically denied that Branch had ever informed him that Branch was under the influence of alcohol at the time of the homicide or that he was aware of any other evidence of Branch's possible intoxication.
Finally, counsel Loveless testified that during his representation he traveled to Indiana to speak with family and friends in furtherance of obtaining mitigating evidence, as well as to talk to Branch's Indiana attorney and to look at court records. Loveless also arranged for Dr. James Larson to act as a confidential mitigation consultant, and had him evaluate Branch. However, Dr. Larson's evaluation was not helpful to the defense. When Allbritton took over the defense, Loveless provided Allbritton with his complete defense file. And, according to Loveless, the two defense attorneys met at least one time to discuss the case.
Again, we can find no error in the trial court's analysis, which relies in large part on the failure of Branch to demonstrate that substantial mitigation evidence existed that counsel failed to discover. While Branch argues on appeal that trial counsel did not obtain school records, medical records, or any other background records pertaining to Branch's background, he fails to confront the fact that no such records were presented at the postconviction evidentiary hearing. Having failed to demonstrate the existence or availability of important and helpful mitigation evidence overlooked by trial counsel, Branch has failed to establish trial court error on this claim. As the trial court's order makes clear, most of the evidence put forth at the postconviction hearing was cumulative to evidence that was presented earlier and considered as mitigation, was not credible, or would actually have been harmful to the defendant's case.
Based upon the foregoing, we find no error in the trial court's denial of Branch's claim that trial counsel was ineffective for failing to prepare and present additional mitigation evidence at the penalty phase.

Hiring Experts
The trial court denied Branch's claim of ineffectiveness for not hiring a pathologist and a blood spatter expert to counter the testimony of the State's experts at trial. Trial counsel was questioned extensively about this issue and his testimony essentially was that he believed his ability to cross-examine the State's witnesses coupled with the importance of the right to present first and last closing arguments were sufficient reasons to avoid the presentation of such witnesses. The trial court concluded that this was an acceptable *479 trial strategy, especially in light of Branch's defense and testimony at trial that he did not commit the crime.
The trial court also evaluated the credibility of testimony of the blood spatter expert and pathologist presented by the defense at the postconviction hearing and the weight of their evidence in light of the actual evidence presented at trial. Importantly, neither postconviction expert identified any substantial factual mistakes made by the State's experts. Rather, they expressed some differing opinions. The State's medical examiner testified again at the postconviction hearing and emphasized the importance of his actual examination of the victim's body as a basis for his opinions. Furthermore, both experts presented by the defense in postconviction conceded the possibility of the correctness of the State's experts' testimony at trial. Therefore, we find no error in the trial court's holding that trial counsel's decision to only cross-examine the State's experts so as to retain both first and last closing arguments was not an unreasonable trial strategy. The court rejected the claim on the basis that it constituted mere second-guessing of defense counsel's trial strategy. We find no error in the trial court's analysis. "The standard is not how present counsel would have proceeded, in hindsight, but rather whether there was both a deficient performance and a reasonable probability of a different result." Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995); see also Brown v. State, 846 So.2d 1114, 1121 (Fla.2003).

Objecting to the Introduction of an Abstract
Branch argues that trial counsel was ineffective for failing to object to the introduction of the abstract of a prior judgment of conviction from Indiana at sentencing to prove the prior violent felony aggravator against Branch. We agree with the trial court that no prejudice was established on this claim since the record reflects the subsequent admission at sentencing of the certified court record from Indiana demonstrating that Branch was the defendant in the Indiana case. There is no assertion here of mistaken identity.

Impeaching Witnesses
Branch alleges that trial counsel was ineffective for his failure to impeach two State witnesses, Melissa Cowden and Joshua Flarm. Upon review of the record, we find no error in the trial court's denial of this claim first, on the basis of trial counsel's testimony that any impeachment would have been of little value compared with the risk of alienating the jury and, second, based upon the limited value of the alleged impeachment, no prejudice was established.

Guilt Phase Investigation
Branch contends that he demonstrated below that trial counsel was ineffective based upon his failure to investigate in relation to the guilt phase of trial. However, in rejecting Branch's claim, the court below explained:
[T]he Defendant failed to present any substantive evidence at the hearing to support this claim, instead relying on speculation. This is especially significant because the Defendant has had over ten years between the time of his trial and the date the evidentiary hearing to further investigate his case. Yet, the Defendant could not produce one single piece of material evidence which went undiscovered by his trial counsel.
Although both defense counsel testified extensively as to their efforts on behalf of Branch, postconviction counsel for Branch failed to present evidence that there was other significant defense evidence that counsel failed to explore or uncover. We *480 find no error in the trial court's rejection of this claim on the basis of a failure of proof at the postconviction hearing.

Objecting During the Guilt and Penalty Phases
Branch contends that the trial court erred in not finding his counsel ineffective for failing to object to certain actions of the prosecutor. First, he asserts that the prosecutor requested that a State witness speculate on an event without a good-faith basis to believe the event occurred and that counsel should have objected. We have reviewed the questioning asserted as improper and, like the trial court, find no basis for faulting trial counsel for not objecting. The questioning resulted in an explanation by the medical examiner that a ligature used to choke the victim could also have been used to control the free movement of the victim. On appeal, Branch has demonstrated no legal basis for excluding this testimony or counsel's neglect in not seeking its exclusion.
The three remaining instances in which Branch finds counsel deficient for not objecting arose during the State's guilt phase closing argument. Branch asserts that the prosecutor improperly invoked sympathy for the victim during closing argument by citing his reference to her as "this poor girl" and "look at what happened to that poor girl." After reviewing the arguments in context, we concur in the trial court's conclusion that no deficiency or prejudice has been shown. First, Branch has not demonstrated any error in the prosecutor's use of the adjective "poor" to describe the victim. Second, trial counsel testified during the evidentiary hearing that he confronted the issue of sympathy directly, rather than objecting to any particular references to the victim. The trial court found this to be a reasonable trial strategy.
Next, Branch argues that trial counsel was ineffective for failing to object to the prosecutor's alleged improper bolstering or vouching for the testimony of Melissa Cowden:
You had an opportunity to see Melissa Cowden testify, to be careful to tell you the truth regarding what she saw and she heard. She held nothing back. I'm sure her testimony was embarrassing for her with regard to some aspects of it but she told the truth. The Eric that killed Susan Morris had a cut on his hand.
Trial counsel testified that he found nothing objectionable here, and he did not want to question Cowden's credibility unduly because he was relying on her testimony to support certain aspects of Branch's defense. Thus, he chose not to challenge her credibility directly so as to not affect the helpful aspects of her testimony, and also so as to not alienate the jury in keeping with his general strategy of not excessively objecting or cross-examining some State's witnesses.
Finally, Branch argues that counsel was ineffective for not objecting to the prosecutor's suggestion that Branch was driving around in a vehicle he had improperly taken and that he wanted to steal another car. Trial counsel testified at the evidentiary hearing that he did not object because he believed the evidence generally supported this argument. The trial court rejected this claim by finding that the argument was a reasonable inference in light of the testimony at trial, and hence, counsel was not deficient in his decision not to object. We find no error by the trial court in rejecting these claims.

Prior Violent Felony Aggravator
Branch argues that the trial court erred in denying his postconviction claim *481 that his Indiana conviction of sexual battery should not have been used to establish the prior violent felony aggravating circumstance because his prior conviction would not be a felony under Florida law. However, Branch did not object at trial and failed to present this issue as it is now framed on direct appeal. As a result, Branch is procedurally barred from raising this claim in postconviction proceedings or this appeal. See Porter v. State, 788 So.2d 917, 921 n. 6 (Fla.2001) (claim that trial court considered nonstatutory aggravating circumstance should be brought on direct appeal); see also Atwater v. State, 788 So.2d 223, 228 n. 5 (Fla.2001).[5]

Cumulative Error
Finally, having found no individual error in the trial court's rulings, we also find no merit in Branch's claim of cumulative error by the trial court in denying postconviction relief.

PETITION FOR WRIT OF HABEAS CORPUS
Having affirmed the trial court's denial of Branch's 3.850 motion, we now consider Branch's petition for writ of habeas corpus. Branch contends that appellate counsel was ineffective for (1) failing to argue that the Indiana conviction was not a felony under Florida law and the inadmissibility of the abstract of judgment; (2) failing to raise on appeal the trial court's error in admitting into evidence DNA probability statistics without conducting a proper Frye[6] hearing; (3) failing to raise the issue of the trial court's order denying the defense's request for a recess; and (4) failing to argue that the trial court had failed to conduct a proper Nelson[7] inquiry.
This Court has consistently stated that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object. See, e.g., Randolph v. State, 853 So.2d 1051, 1068 (Fla.2003); Brown v. State, 846 So.2d 1114, 1127 (Fla. 2003); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding appellate counsel was not ineffective in failing to raise allegedly improper comments by the prosecutor which were not preserved for appeal by objection). The sole exception to the general rule is where appellate counsel fails to raise a claim which, although not preserved at trial, rises to the level of fundamental error. See, e.g., Rodriguez v. State, 919 So.2d 1252, 1282 (Fla.2005); Thomas v. State, 748 So.2d 970, 985 n. 10 (Fla.1999). In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960); see also Rodriguez, 919 So.2d at 1282; Kilgore v. State, 688 So.2d 895, 898 (Fla.1996); State v. Delva, 575 So.2d 643, 644-45 (Fla.1991).

Prior Violent Felony
Branch contends that appellate counsel was ineffective for failing to argue that the abstract of judgment from the Indiana conviction was not admissible and *482 that the conviction was not a felony under Florida law.
We must first determine whether the issue as to the admissibility of the abstract was preserved for appellate review. During the penalty phase, the State presented the testimony of Bruce Fairburn with the Florida Department of Law Enforcement concerning the Indiana conviction. He testified that the abstract of judgment was certified in front of him. Subsequently, the abstract of judgment was admitted into evidence. However, the admission of the abstract was not objected to at trial by the defense. Therefore, the issue was not preserved for appellate review. Furthermore, we conclude that the admission of the abstract does not rise to the level of fundamental error. As a result, we hold that appellate counsel was not ineffective for failing to raise this claim on direct appeal.
Next, Branch argues that appellate counsel provided ineffective assistance because he did not challenge the Indiana conviction on the basis that it was not a felony under Florida law. Branch acknowledges that appellate counsel argued that the trial court erroneously allowed the State to introduce, without any further proof, the Indiana judgment as proof of a "violent" felony conviction. That argument was made in furtherance of the defense's claim at trial that the admission was improper because the State did not establish that the Indiana conviction was a violent felony as defined under Florida law. Here, Branch appears to disagree with the manner in which his appellate counsel raised the issue on direct appeal. However, this is an insufficient ground to be heard in a habeas corpus petition. See Brown v. State, 894 So.2d 137, 159 (Fla. 2004) ("Habeas petitions, however, should not serve as a second or substitute appeal and may not be used as a variant to an issue already raised."); see also Swafford v. Dugger, 569 So.2d 1264, 1266 (Fla.1990) ("After appellate counsel raises an issue, failing to convince this Court to rule in an appellant's favor is not ineffective performance.").
Furthermore, even if Branch is correct in his assertion that the Indiana conviction did not qualify as a prior violent felony to support the aggravating circumstance, any error would be considered harmless. See Peterka v. State, 640 So.2d 59, 71 (Fla. 1994) (holding that reversal "is permitted only if this Court finds that the errors in weighing the aggravating and mitigating circumstances, if corrected, reasonably could have resulted in a lesser sentence"). Here, the trial court found two other significant aggravators: the murder was committed in the course of a sexual battery and was especially heinous, atrocious, or cruel. The trial court determined that the mitigating evidence was marginal. Moreover, contrary to Branch's assertions, the mitigating evidence presented at the evidentiary hearing adds little more to what was previously presented. Therefore, Branch cannot demonstrate that confidence in the result on appeal is undermined, and appellate counsel will not be held ineffective for failing to raise a non-meritorious issue. See Spencer v. State, 842 So.2d 52, 74 (Fla.2003).

DNA Evidence
Branch asserts that appellate counsel was ineffective for failing to raise on appeal the issue of the trial court's error by admitting into evidence DNA probability statistics without conducting a proper Frye hearing.
Under Frye v. United States, 293 F. 1013 (D.C.Cir.1923), an expert scientific opinion must be based on techniques that have been generally accepted by the relevant scientific community and *483 have been found to be reliable. See id. at 1014. Under Florida law, a Frye hearing is utilized in order to determine if the expert scientific opinion is admissible. See Smith v. State, 931 So.2d 790, 31 Fla. L. Weekly S159, S164 n. 10 (Fla. Mar. 9, 2006). However, Frye is utilized in Florida only when the science at issue is new or novel. See Brim v. State, 695 So.2d 268, 271-72 (Fla.1997).
At trial, defense counsel argued that the statistical conclusions from Dr. James Pollock, Jr. should not be admitted into evidence because the State had not established that the witness participated in the compilation of the data-sets that he relied upon in calculating the population frequency. The trial court rejected trial counsel's argument and admitted the DNA probability statistics.
In contending that the trial court made no determination as to the qualifications of Dr. Pollock and did not mention specifically that the data-sets satisfied the Frye test, Branch argues that the trial court improperly admitted the DNA statistical evidence. However, under Florida law, the expert need not be a statistician himself to testify as to the statistical results. See Darling v. State, 808 So.2d 145, 158 (Fla.2002). Furthermore, admissibility is not contingent upon the expert having compiled the database himself. See id. at 158 (citing Lomax v. State, 727 So.2d 376 (Fla. 5th DCA 1999)). Instead, "a sufficient knowledge of the authorities pertinent to the database is an adequate basis on which to render an opinion." Butler v. State, 842 So.2d 817, 828 (Fla.2003). Here, the record reflects that Dr. Pollock had sufficient knowledge to render an opinion. Therefore, Dr. Pollock had an adequate basis on which to render an opinion on the DNA statistics evidence.

Request for a Recess
Branch asserts that appellate counsel was ineffective for not raising the issue that the trial court improperly denied his request for a recess so that counsel could confer with petitioner before beginning redirect examination of Branch.
In Bova v. State, 410 So.2d 1343 (Fla.1982), this Court held that a trial court could not, without violating the constitutional right to counsel, preclude attorney-client consultation during a recess. Id. at 1344-45. However, in Perry v. Leeke, 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989), the United States Supreme Court held that the Sixth Amendment right to counsel is not violated when a trial court denies such access during a short recess, on the basis that when a defendant becomes a witness, the defendant has no constitutional right to consult with his lawyer while he is testifying. Id. at 283-84, 109 S.Ct. 594. According to the Court, the defendant has an absolute right to such consultation before he begins to testify, but neither he nor his lawyer has a right to have the testimony periodically interrupted in order to give him the benefit of counsel's advice. Id. at 281, 109 S.Ct. 594. Moreover, there is not a constitutional right to a recess and whether to grant one is a matter of discretion to be exercised by the trial court. See id. at 283, 109 S.Ct. 594; Bova, 410 So.2d at 1344 ("[T]he trial court has complete discretion in permitting recesses and in controlling recess duration."). Here, there was no recess granted by the trial court. We conclude that the trial court did not abuse its discretion in denying Branch's attempt to confer with counsel in the middle of his testimony. Based upon the foregoing, we hold that appellate counsel was not ineffective in failing to raise an issue that is without merit.

*484 Nelson Inquiry
Branch asserts that his appellate counsel, who had argued on appeal that the trial court had failed to conduct a proper inquiry under Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973), was ineffective for failing to argue that Nelson is inadequate and unconstitutional as applied in Branch's case, because Nelson only requires an inquiry of court-appointed counsel and fails to protect a defendant's Sixth Amendment right to competent private counsel. Branch also argues that appellate counsel should have pointed out in the motion for rehearing that Branch's grandfather requested counsel to withdraw and should have included the allegations made in his letter to the trial court.
However, a review of the record reflects that there is no basis, legally or factually, for appellate counsel to have made these arguments. The record reflects no necessity for a Nelson inquiry since Branch did not discharge private counsel and he made no attempt to demonstrate indigency in order for the public defender to be reappointed to his case. In fact, this Court found on direct appeal that Branch was not seeking to discharge counsel and that his comments appeared to constitute a general complaint rather than a formal allegation of incompetence. Branch, 685 So.2d at 1252. In that regard, this case is similar to Davis v. State, 703 So.2d 1055 (Fla.1997), to the extent that the defendant "never made an unequivocal request to discharge his court-appointed counsel; he subsequently allowed his attorney to represent him throughout the trial." Id. at 1058. Indeed, in Davis, the defendant had at least filed a motion to discharge counsel, whereas here Branch simply sought court inquiry as to counsel's representation. Further, unlike the situation in Davis, Branch could have discharged retained counsel at any time. See Fratcher v. State, 842 So.2d 1044, 1046 (Fla. 4th DCA 2003) ("A criminal defendant has the right to select his own private counsel, so long as he is not seeking to delay or otherwise subvert judicial proceedings."). As we noted in Branch's direct appeal, a Nelson inquiry into the effectiveness of counsel is not required when a defendant seeks to discharge a privately hired attorney. See Branch, 685 So.2d at 1252. Based upon the foregoing, we conclude that appellate counsel was not ineffective with regard to Branch's Nelson claims.

CONCLUSION
For the reasons discussed above, we affirm the circuit court's denial of postconviction relief and deny the petition for writ of habeas corpus.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Branch's motion alleged: (1) ineffective assistance of trial counsel at the guilt phase and violations of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); (2) ineffective assistance of trial counsel during the penalty phase and violations of Brady and Giglio; (3) newly discovered evidence shows that the jury and trial court considered a nonstatutory aggravating circumstance of an improper prior violent felony; (4) counsel was ineffective for failing to obtain an adequate mental health evaluation; (5) postconviction counsel was unconstitutionally hindered because of the rules prohibiting counsel from interviewing jurors; (6) jury instructions diluted the jury's sense of overall responsibility in Florida's death penalty scheme; (7) Florida's death penalty sentencing scheme is unconstitutional under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (8) unconstitutionality of execution by electrocution and lethal injection; (9) defendant may become mentally incompetent by the time of his execution; (10) felony underlying felony murder was an automatic aggravating circumstance; (11) improper direct appeal and ineffective assistance of appellate counsel; (12) public records are being withheld; (13) Florida's capital punishment statute is unconstitutional because it fails to prevent the arbitrary imposition of the death penalty; and (14) cumulative error.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] An order denying Branch's amended motion for postconviction relief was entered on March 4, 2005.
[4] The trial court also concluded that Branch had abandoned the car. See State v. Lampley, 817 So.2d 989, 991 (Fla. 4th DCA 2002) ("The test for abandonment is whether a defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.") (quoting 14A Fla.Jur.2d Abandoned Property § 633 (2001)); State v. Terzado, 513 So.2d 741, 742 (Fla. 3d DCA 1987) ("If Terzado abandoned his car, he lost his reasonable expectation of privacy in it, and may not claim a violation of his fourth amendment rights."). In fact, we previously noted on direct appeal that "when Branch's Pontiac was discovered abandoned in the Pensacola airport parking lot, `medium velocity splatter' bloodstains matching Morris's DNA profile were found on boots and socks inside." Branch, 685 So.2d at 1252 (emphasis added).
[5] To avoid this potential procedural default, Branch has also filed a habeas petition asserting that direct appeal counsel was ineffective for failing to raise the issue as Branch has done on postconviction review.
[6] Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923).
[7] Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973).