DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

MUSTAPHA RASUL MUHAMMAD,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2023-0502

_____

July 17, 2024

Appeal from the Circuit Court for Manatee County; Frederick P. Mercurio, Judge.

Howard L. Dimmig, II, Public Defender, and Lisa Martin, Assistant Public Defender, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Lydon Schultz, Assistant Attorney General, Tampa; and Krystle Celine Cacci, Assistant Attorney General, Tampa (substituted as counsel of record), for Appellee.

LaROSE, Judge.

After the trial court denied his motion to suppress evidence, Mustapha Rasul Muhammad pleaded no contest to trafficking in fentanyl. *See* § 893.135(1)(c)4.a.(III), (1)(c)4.b.(II), Fla. Stat. (2019). He appeals his judgment and ten-year prison sentence. We have jurisdiction. *See* Fla. R. App. P. 9.030(b)(1)(A).

Mr. Muhammad insists that the trial court erred in denying his motion. He maintains that police officers lacked a warrant and legal cause to enter his car. We affirm. Mr. Muhammad abandoned his car

and, likewise, abandoned any expectation of privacy in the car or its contents.

## Background

Two police officers were conducting surveillance in a high-crime area of Bradenton.  Several houses down the street from their location, gunshots rang out.  Upon hearing the shots, they rushed to the scene in their unmarked black Jeep.  They did not activate their police lights or siren.  They came to a screeching halt just behind Mr. Muhammad's parked white Cadillac automobile.

They hastily exited the Jeep.  One officer chased after the shooters; the other stayed back to secure the scene.  Although not in police uniform, the officers wore bulletproof vests with the word "POLICE" emblazoned across the chest and back.

A twelve-minute video recorded from a nearby pole camera offers more context.  A few minutes before the shooting, Mr. Muhammad drove up to a house and parked his car on the street.  He exited his car, shutting the driver's door behind him.  Many people were in the front yard of the house.  Mr. Muhammad joined the group, leaving his car's engine running.

Several minutes before the shooting, a different, albeit similar-looking, white Cadillac automobile slowly drove past the house.  This car circled the block and returned two minutes later.  A shootout occurred between an occupant of the car and several armed people in the front yard.  Mr. Muhammad was not a shooter.  Most of the bystanders immediately fled.  The other white Cadillac also sped away.

Mr. Muhammad did not flee.  Moments after the shooting, he nonchalantly walked back to his car as the officers peeled up.  Seeing the Jeep bearing down, he took flight.  Mr. Muhammad left his car behind with the engine still running.

2

Chaos ensued.  An officer testified at the suppression hearing that there was much commotion.  During the tumult, he "heard someone saying white Cadillac, it was the white Cadillac."  Mr. Muhammad did not return to the scene.

Curiously, the video ends and does not show the officers entering Mr. Muhammad's car.  The record indicates that officers opened the driver's door and shut off the engine.  While leaning in, an officer saw a baggie of fentanyl in a cup holder.  Some fifteen minutes lapsed between the shooting and the entry into Mr. Muhammad's car.  No suppression hearing testimony established when or where officers ultimately found Mr. Muhammad.[1]

In denying Mr. Muhammad's suppression motion, the trial court found that Mr. Muhammad fled the scene leaving his running car unattended, contrary to section 316.1975(1), Florida Statutes (2019).  *See id.* ("A person driving or in charge of any motor vehicle may not permit it to stand unattended without first stopping the engine, locking the ignition, and removing the key.").  In short, Mr. Muhammad abandoned his car.  According to the trial court, this gave the "officers . . . authority . . . to open the door and shut the car off."  In doing so, "they happened to see in plain view what they believed to be controlled substances."  The trial court reasoned further that, based "[o]n the totality of the circumstances, the opening of the door to shut the vehicle off was not unreasonable and did not constitute an illegal search."

## Analysis

"[I]n reviewing a trial court's ruling on a motion to suppress, this

---

[1] Our record reflects that police arrested Mr. Muhammad eight months later on an outstanding warrant for trafficking in fentanyl.

3

court must give deference to the trial court's factual findings if those findings are supported by competent, substantial evidence, but this court must review the trial court's ruling of law de novo." *State v. M.B.W.*, 276 So. 3d 501, 505 (Fla. 2d DCA 2019) (alteration in original) (quoting *State v. Roman*, 103 So. 3d 922, 924 (Fla. 2d DCA 2012)). And "a trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness, [where] the reviewing court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *State v. Peltier*, 373 So. 3d 380, 385 (Fla. 2d DCA 2023) (quoting *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002)).

"Ordinarily, 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Ross v. State*, 319 So. 3d 807, 810 (Fla. 2d DCA 2021) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). Abandoned property does not fall under the aegis of the Fourth Amendment. *State v. Milewski*, 194 So. 3d 376, 379 (Fla. 3d DCA 2016).

> A "person who claims the protection of the [Fourth] Amendment [must have] a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128 (1978). "Although warrantless searches and seizures are generally prohibited by the Fourth Amendment to the United States Constitution and article I, section 12, of the Florida Constitution, police may conduct a search without a warrant . . . if the individual has abandoned his or her interest in the property in question." *Peterka v. State*, 890 So. 2d 219, 243 (Fla. 2004).

*Caraballo v. State*, 39 So. 3d 1234, 1244-45 (Fla. 2010) (alterations in original). "In essence, what is abandoned is not necessarily the defendant's property, but his reasonable expectation of privacy therein."

*State v. Kennon*, 652 So. 2d 396, 398 (Fla. 2d DCA 1995) (quoting *City of St. Paul v. Vaughn*, 237 N.W.2d 365, 371 (Minn. 1975)).

Accordingly, "[t]he test for abandonment is whether a defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *Caraballo*, 39 So. 3d at 1245 (alteration in original) (quoting *Branch v. State*, 952 So. 2d 470, 476 n.4 (Fla. 2006)). It is an objective test. *O'Shaughnessy v. State*, 420 So. 2d 377, 379 (Fla. 3d DCA 1982); *see also Hargrove v. State*, 49 Fla. L. Weekly D889, D890 (Fla. 6th DCA Apr. 19, 2024) (emphasizing that courts rely on an objective test, "whether the defendant retained an objectively reasonable expectation of privacy in the subject property at the time of a search," to ascertain whether property has been abandoned). We examine the totality of the circumstances to assess whether the defendant retained a reasonable expectation of privacy in the property. *Kennon*, 652 So. 2d at 397.

We agree with the trial court that Mr. Muhammad abandoned his car, abandoning his interest in the property and any attendant Fourth Amendment protections. *See Caraballo*, 39 So. 3d at 1245; *e.g.*, *State v. Wynn*, 623 So. 2d 848, 849 (Fla. 2d DCA 1993) ("Once the vehicle was abandoned, Wynn no longer had an expectation of privacy in the vehicle."); *State v. Terzado*, 513 So. 2d 741, 742 (Fla. 3d DCA 1987) ("If Terzado abandoned his car, he lost his reasonable expectation of privacy in it, and may not claim a violation of his [F]ourth [A]mendment rights.").

*State v. Lawson*, 394 So. 2d 1139, 1140-41 (Fla. 4th DCA 1981), is particularly persuasive. There, the Fourth District held that Mr. Lawson's acts of parking his car in a "no loitering" zone, and then, when confronted by a police officer, "hastily leaving the scene without saying a word," evidenced an abandonment of the car. *Id.* Consequently, a law

5

enforcement officer could investigate the ownership of the car and conduct a search of the car, seizing any contraband, whether in plain view or not. *Id.* There is little light between *Lawson* and Mr. Muhammad's case.

*Wynn*, 623 So. 2d at 848, is also instructive. There, law enforcement officers saw two vehicles parked illegally. *Id.* Known drug dealers were speaking with both vehicles' occupants; the drug dealers fled when they saw the officers. *Id.* Mr. Wynn got out of his truck, said nothing to the officers, and left the truck unlocked and illegally parked. *Id.* After forty-five minutes with no one returning for the truck, the officers searched it for identification or registration information and found cocaine. *Id.* at 849. Relying on *Lawson*, we concluded that the search was permissible. *Wynn*, 623 So. 2d at 849.

The same result obtains here. As the trial court found, Mr. Muhammad remained at the scene after the drive-by shooting. He was returning to his car when the officers arrived; then, he fled. He did not return.

Mr. Muhammad emphasizes that the black Jeep was unmarked and did not have police lights on and that the officers were not in uniform. He claims that he reasonably believed that the vehicle contained additional assailants. He contends that he was fleeing from the prospect of another drive-by shooting, not the police. *Cf. O'Shaughnessy*, 420 So. 2d at 379 (observing that "an intention to abandon will not ordinarily be presumed, and this is particularly true if the conduct of the owner can be explained consistently with a continued claim" of a reasonable expectation of privacy (quoting *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir. 1965))).

The trial court properly rejected this argument:

I know that under the circumstances when a drive by

shooting occurs it's not unreasonable for people to flee, but the shooting had taken place several minutes beforehand, or at least a few moments beforehand, and it came from a different vehicle not resembling the [police] car that pulled up behind [Mr. Muhammad]'s car. The fact that he never returned also is an indicator of abandonment.

We conclude that there was no unreasonable conduct by police officers when they reached inside an abandoned car, at an active crime scene, to turn off the engine. *See Twilegar v. State*, 42 So. 3d 177, 194 (Fla. 2010) ("The test for abandonment is whether a defendant voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it *at the time of the search*." (emphasis added) (quoting *State v. Lampley*, 817 So. 2d 989, 991 (Fla. 4th DCA 2002))). Officers certainly could search the abandoned car for identification or registration information, such information being relevant to the unfolding shooting investigation. *See Wynn*, 623 So. 2d at 849.

## Conclusion

Mr. Muhammad left his car unattended with the engine running. He fled from police officers. Abandoning his car, he forfeited any expectation of privacy in the car or its contents. Considering the totality of circumstances, the officers' discovery of fentanyl in plain view while turning off the car's engine does not violate the Fourth Amendment. The trial court properly denied Mr. Muhammad's suppression motion. We affirm his judgment and sentence.

Affirmed.


SLEET, C.J., and MORRIS, J., Concur.

———————————————

Opinion subject to revision prior to official publication.

7