CONNER, J.
Omar Loureiro appeals his conviction and life sentence for first-degree murder. The primary issue we address is the admissibility of a second confession given after abbreviated Miranda[1] warnings. Loureiro moved to suppress his confession for failure to comply with Miranda. We reverse and remand for a new trial be *950 cause the second confession should have been suppressed for failure to give full Miranda warnings. We affirm, after discussion, the admission of evidence of the victim’s reputation for peacefulness because the issue may arise again on retrial.[2]

Factual Background and Trial Proceedings

The facts adduced at trial showed that Loureiro and J.L. had been drinking together with friends at two different bars. One witness testified that, at one of the bars, Loureiro made a threatening statement to J.L. to stay away from a woman, in whom Loureiro was interested, or he would kill J.L. The witness further testified that Loureiro emphasized the threat by moving his finger across J.L.’s neck in a slicing gesture. However, other witnesses testified that Loureiro and J.L. were on friendly terms the entire evening, including when they left the second bar. Loureiro and J.L. left the second bar and went to J.L.’s apartment, which he shared with one of the witnesses.
J.L.’s roommate returned to the apartment the next morning and found J.L. dead at the door to J.L.’s bedroom. According to the medical examiner, J.L. was stabbed several times. There was also an incised or slicing-type wound on his neck; its width expanded across the neck and the depth reached from the front on the neck to the front of his spine. J.L.’s hands were bruised. The bruises on his left hand and wrist were consistent with defensive wounds. The medical examiner also found petechial hemorrhages in J.L.’s eyes, which could have been caused by choking or compressing his neck and throat. He explained that it appeared that all injuries were inflicted while J.L. was in the bedroom.
Immediately after the murder, Loureiro fled to Nicaragua. While there, he was incarcerated for other reasons. After determining Loureiro was in jail in Nicaragua, two detectives travelled to interrogate him on August 1, 2002. They began the interrogation by giving him complete Miranda warnings in Spanish and English, reading from a card. Loureiro admitted to stabbing and murdering J.L., but contended that it was in self-defense because J.L. made aggressive sexual advances toward him (“the Nicaraguan confession”).
Loureiro was indicted by a grand jury in 2004 and charged with the premeditated murder of J.L.[3] In January 2005, Lourei-ro was expelled from Nicaragua. Upon his return to the United States, he was arrested for J.L.’s murder. Shortly after his arrest, he was interrogated again and gave a video-recorded second confession (“the recorded second confession”), which was virtually the same as the Nicaraguan confession. At the beginning of the second recorded interrogation, one of the detectives made mention of the Nicaraguan interrogation and then proceeded to give partial Miranda warnings: ‘You have the right to remain silent; anything you say can be used against you; you have the right to an attorney; if you can’t afford one, one will be appointed for you at no charge, all right?” Loureiro stated he understood his rights and agreed that he remembered when he spoke to the detective in Nicaragua. During the second interrogation, he again admitted to losing control and stabbing J.L., but contended his actions were in self-defense because *951 J.L. made aggressive sexual advances toward him.
After a jury trial, Loureiro was convicted of the murder and sentenced to death in 2007. While his direct appeal was pending, our supreme court remanded the ease for an evidentiary hearing. During the remand, the state agreed his conviction should be vacated, which resulted in the case being returned to the circuit court for a new trial.[4]
The retrial lasted eight days. Loureiro did not testify or put on any evidence. During the retrial, the Nicaraguan confession was not introduced into evidence.[5] Instead, the State introduced portions of the recorded second confession. In the portions of the recording played by the State, Loureiro explained that he told J.L. he wasn’t “like that,” meaning gay, but J.L. “grabbed” him and “went down on” him, which led the two to get into a fight. He explained: “I was mad. I got mad. I mean, I didn’t know this guy was gay like that and if he’s a gay guy, I don’t care, but you know, not to attack me like force me to do something that I don’t want.” He said J.L. pulled his pants down and he (Loureiro) went totally “berserk.” He grabbed something nearby and cut the man. He did not know what he did with the weapon afterward. He lost his senses and just went crazy.
After the State played its portions of the recorded second confession, Loureiro played additional portions of the same interview pursuant to the rule of completeness.[6] In the portion played by the defense, Loureiro explained that he fled to Nicaragua because he was on probation at the time and feared he would go to prison for violating probation. He made multiple references to J.L. grabbing him, pulling his pants down and trying to force him to have sex, but in the portion played by the defense, Loureiro additionally said, “[He had] to grab something [to defend himself with] ... if not, I would have — he would have fucked me.”
To rebut the defense presentation of Loureiro’s statements of self-defense during the second recorded confession, the State presented the testimony of three witnesses regarding J.L.’s reputation for peacefulness. Loureiro objected, contending that the presentation of evidence under the rule of completeness did not authorize the State to introduce evidence of the victim’s reputation for peacefulness. The objection was overruled.
The State conceded in closing argument that the only evidence directly linking Loureiro to J.L.’s death was his confession to law enforcement. On retrial, the jury found Loureiro guilty as charged, but did not recommend the death penalty.

Legal Analysis

The Recorded Second Confession

Loureiro moved to suppress the recorded second confession based on inadequate Miranda warnings. The motion was denied. In reviewing an order on a *952 motion to suppress a confession, an appellate. court is to accord a presumption of correctness to the trial court’s rulings with regard to the trial court’s determination of historical facts, but must independently review mixed questions of law and fact that ultimately determine constitutional issues. Rigterink v. State, 66 So.3d 866, 884 (Fla.2011). The State bears the burden of establishing by a preponderance of evidence that the confession was freely and voluntarily given. Id.
The delivery of Miranda warnings at the beginning of the interrogation leading to the second confession was recorded. Loureiro was told by the detective:
All right, you know, because we’re here in the states now, before you can — I can talk to you about this, I have to tell you, about your rights. You have the right to remain silent; anything you say can be used against you; you have the right to an attorney; if you can’t afford one, one will be appointed for you at no charge. All right?
The trial court concluded that Loureiro was properly advised of his Miranda rights because he was told that he had the right to remain silent and the right to an attorney. The right to an attorney was without a time reference. For that reason, the trial court concluded that “no confusion was created by the manner in which Defendant was advised of his rights.” Unfortunately, the trial court’s application of the law was incorrect.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court outlined the procedural parameters that law enforcement must employ before and during a custodial interrogation of a suspect. The Court was explicit about four invariable warnings that must be given:
He must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, and [4] that if he cannot afford an attorney one will be appointed to him prior to any questioning if he so desires.
Id. at 478-79, 86 S.Ct. 1602 (emphasis added). Most importantly to this appeal, Miranda held “that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege' [against self-incrimination] we delineate today.” Id. at 471, 86 S.Ct. 1602 (emphasis added). The third warning has been interpreted to mean that the suspect is entitled to have counsel present both before and during an interrogation if the suspect so desires. California v. Prysock, 453 U.S. 355, 360-61, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (explaining that the presence of counsel includes the right to a lawyer before the suspect is questioned, while the suspect is being questioned, and all during the questioning). Miranda also makes clear “unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of the interrogation can be used against [the defendant].” Miranda, 384 U.S. at 479, 86 S.Ct. 1602.
As can be gleaned from the language of Miranda, the point of the third warning is to advise the suspect of his or her right to “the presence of an attorney.” It is clear from the warnings given to Loureiro before his second confession that he was advised “you have the right to an attorney,” but he was told nothing about his right to the presence of an attorney before or during questioning. The State argues, as the trial judge concluded, there was no time reference to the right to counsel; *953 thus, Loureiro was adequately advised as to his right to the presence of counsel both before and during questioning. Failure to state a time reference for the right to counsel does not affirmatively convey the notion one is entitled to talk to a lawyer before questioning and to have a lawyer present during questioning. Being told, “you have the right to remain silent,” followed by “anything you say can be used against you,” implies there may be further proceedings. By giving those warnings and then immediately advising “you have the right to an attorney,” one could infer the right to counsel refers to further proceedings. The State argues that the warning given to Loureiro “tracked the language of Miranda,” but that is simply not accurate. The combination of words used to warn Loureiro did not meet the requirements of Miranda because they fail to affirmatively convey a notion of the right to the presence of an attorney before and during questioning.[7]
The State makes an additional argument that because Loureiro was properly advised of Miranda warnings during the Nicaraguan interrogation and he acknowledged at the beginning of the recorded second confession that he was advised of his rights at his first interrogation, there was no need to give full Miranda warnings before questioning during the second interrogation. However, the State provided no citations of authority allowing full warnings given two years prior to authorize abbreviated warnings at the beginning of a second interrogation.
We first observe that the facts of this case are distinguishable from cases which address the need for fresh and complete Miranda warnings when interrogation resumes after the defendant has invoked the right to remain silent or right to counsel during an earlier interrogation. However, there are four supreme court decisions in Florida which discuss whether fresh Miranda warnings are needed when there is a relatively brief interruption or delay between interrogations, which is not caused by the defendant invoking the right to remain silent or the right to counsel.
The most recent discussion appears in McWatters v. State, 36 So.3d 613 (Fla.2010), which in turn discussed Escobar v. State, 699 So.2d 988 (Fla.1997), and Nixon v. State, 572 So.2d 1336 (Fla.1990). McWatters was arrested for crimes unrelated to the homicides and sexual batteries which were the subject of the appeal. The arresting officer gave McWatters full Miranda warnings at the time of his arrest. Very shortly after being arrested, McWatters asked to speak to a different detective. When speaking to the other detective, McWatters made incriminating statements regarding the crimes on appeal. Before speaking to McWatters, the other detective did not give any Miranda warnings. Although the court noted the record did not reveal exactly how much time had passed between the Miranda warnings by the arresting officer and the interview by the other detective, it was clear the interlude was comparatively brief. McWatters sought to suppress his statements to the other detective because *954 he was not given Miranda warnings. In upholding the admission of McWatters’ statements, the court wrote:
McWatters’ more general argument that not readvising him of his Miranda rights immediately before his interview was constitutionally unsound is also without merit. Neither the United States Supreme Court nor any Florida court has set an “expiration date” on properly administered Miranda warnings where the defendant does not invoke his rights. To the contrary, in Escobar v. State, 699 So.2d 988, 994 (Fla.1997), abrogated on other grounds by Connor [v. State], 803 So.2d [598] at 608 [(Fla.2001)] this Court rejected an argument that Escobar’s statement made six hours after questioning began should have been suppressed because it was not immediately preceded by a Miranda warning. Similarly, in Nixon v. State, 572 So.2d 1336, 1344 (Fla.1990), this Court found a waiver valid where the interrogating detective only partially reminded the defendant of his Miranda rights, because the defendant had previously been given a full reading of his rights approximately eight hours prior to the interview.
McWatters, 36 So.3d at 626.
In Johnson v. State, 660 So.2d 637 (Fla.1995), although the description of facts surrounding the interrogations is brief, it appears Johnson was given full Miranda warnings and interrogated, at which time he did not make incriminating statements. However, when Johnson agreed to take a polygraph test, the interrogation was interrupted. After he failed the polygraph test, the interrogation resumed, but neither fresh nor abbreviated Miranda warnings were given. The court found no error with admitting the confession into evidence because “[t]here is no requirement of additional warnings during the same period of interrogation where it is clear detainees are aware of their rights.” Id. at 642.
There is one Florida case, Davis v. State, 698 So.2d 1182, 1189 (Fla.1997), which discusses whether renewed Miranda warnings are needed prior to a subsequent interrogation where there is a significant gap in time between interrogations. Davis was given full Miranda warnings during a recorded interrogation on March 18. The following May, he wrote a note asking to speak to detectives about the case. The request prompted a second recorded interrogation on May 26. At the beginning of the second interrogation, the detectives asked Davis if he was willing to proceed without the advice of counsel, to which he responded yes, but specific Miranda warnings were not recited. Davis moved to suppress the May 26 interrogation, contending that his Miranda rights were violated. The supreme court wrote:
As to the second taped confession, given on May 26, Davis was not given a fresh set of Miranda warnings, although he was reminded of his right to the advice of counsel. However, numerous state and federal courts have rejected the tal-ismanic notion that a complete readvisement of Miranda warnings is necessary every time an accused undergoes additional custodial interrogation. See Brown v. State, 661 P.2d 1024 (Wyo.1983), and cases cited therein. Rather than adhere to an overly mechanical application of Miranda, we believe that once Miranda has been complied with, the better test for admissibility of statements made in subsequent or successive custodial interrogations is whether the statements were given voluntarily. Such an inquiry must consider the totality of the circumstances. We recede from those portions of Kight and Christ *955 mas that may be inconsistent with this analysis.[8]
In this case, Davis had previously received full Miranda warnings and he validly waived them. There is no evidence of coercion; in fact, Davis was responsible for initiating the contact that led to this second taped confession. He was once again apprised of his right to counsel. Under these circumstances, we conclude that the second taped confession was voluntary and that the underlying concerns of Miranda were fully satisfied. Thus, there was no error in admitting the second taped confession.
Davis, 698 So.2d at 1189. Davis is distinguishable from the facts of this case on two points. In Davis, it was the defendant who reinitiated contact with law enforcement to discuss the case further. Also, the delay between interrogations in Davis was a little more than two months; here, the delay was at least two years and four months.
Davis appears to reject a mechanical application of Miranda and adopt a totality of the circumstances test in determining whether statements from a subsequent or successive custodial interrogation were voluntarily made and thus admissible, despite a failure to give fresh or abbreviated Miranda warnings. Davis was decided in 1997. No other Florida decision has cited the test suggested in Davis.[9] Although the supreme court did not agree to a mechanical application of Miranda in Davis where the delay between interrogations was a little more than two months, we doubt the supreme court would use a less mechanical application where the delay is at least two years and four months.
We agree with Loureiro’s arguments that his second recorded confession was inadmissible for failure to comply with Miranda. The admission of his confession was not harmless error; thus we reverse and remand for a new trial.

Victim’s Reputation for Peacefulness

After the defense introduced portions of the recorded second confession to buttress its theory of self-defense, the trial court permitted the State to introduce evidence of J.L.’s reputation for peacefulness through three witnesses. Loureiro’s objection to such evidence was overruled. Whether an objection is erroneously overruled is reviewed by an abuse of discretion standard. Manning v. State, 801 So.2d 207 (Fla. 4th DCA 2001). However, the rules of evidence limit the trial court’s discretion. Nardone v. State, 798 So.2d 870, 874 (Fla. 4th DCA 2001).
Section 90.404, Florida Statutes (2001), provides that evidence of a person’s character is inadmissible to prove action in conformity with the character trait, with some exceptions. The specific exception pertinent to this case is section 90.404(l)(b)2., which allows for the admission of “[e]vidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut *956 evidence that the victim was the aggressor.”
In support of his contention that the trial court erred, Loureiro cites to the only Florida case which makes a specific reference to section 90.404(l)(b)2: Peterka v. State, 890 So.2d 219, 244 (Fla.2004).[10] In Peterka, the defendant asserted that appellate counsel was ineffective for failing to raise as error the admission of evidence of the victim’s reputation for peacefulness. Trial counsel’s objection to the evidence was overruled.
The supreme court concluded that the trial court erred in allowing evidence of the victim’s reputation for peacefulness to be presented to the jury for two related reasons. First, the court noted that the State elicited the testimony regarding the victim’s reputation for peacefulness before its presentation of Peterka’s statement that the victim initiated a physical confrontation. Thus, this evidence could not have been used at that point to rebut evidence that the victim was the aggressor. Id. Second, quoting from its prior decision in Stoll v. State, 762 So.2d 870, 875 (Fla.2000), the court said, “[the] State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered.” Id. It is this language in Peterka and Stoll upon which Loureiro relies on in support of his argument.
A careful reading of Peterka leads us to conclude that Loureiro misunderstands what the supreme court meant when it wrote that the State may not use rebuttal evidence to contradict evidence the State itself offered. However, if indeed the supreme court announced in Peterka and Stoll a legal principle that the State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered, then like most legal principles, there are exceptions. A trial must be a search for the truth. Jones v. Atkinson, 974 So.2d 573, 576 (Fla. 1st DCA 2008) (explaining that a trial court has broad discretion to rely on its talents, knowledge, and experience to keep search for the truth in a proper channel).
Florida, like the federal courts, has enacted a statute specifically addressing the admissibility of evidence by the State regarding the victim’s character for peacefulness in homicide cases. In commentary on the history of the federal rule of evidence, it has been said that Senator McClellan, in urging adoption of the special rule, argued that:
Too little is said now in behalf of the victims of crime. When the dead man cannot speak in his own behalf, his good name in the community ought to speak for him, when either his character or his conduct is attacked by the accused.
Kenneth W. GRAham, JR., FedeRal Practice & Procedure § 5237 (quoting 117 Cong. Rec. 38643 (1971)). Wigmore put it this way: “The State also can of course offer the deceased’s peaceable character when the issue of self-defense has been raised, even though the defendant has not first introduced the deceased’s violent character;....” Id. (quoting 1 Wigmore, Evidence § 63 at 471 (3d ed. 1940)).
We also note that the language of section 90.404(l)(b)2. does not state the rebuttal evidence is limited to rebutting evidence presented by the defense that the victim was the aggressor. If the point of the statute is to allow evidence “when the dead man cannot speak in his own behalf’ and “when either his character or his conduct is attacked by the accused,” it must be appropriate to allow such evidence when the State is forced to introduce evidence of the defendant’s confession alleging self-defense to prove the defendant did *957 the killing. Except for the words of Lour-eiro, there was no evidence in this case about J.L.’s conduct to suggest he would engage in physical aggression against Loureiro and there was no physical evidence to suggest aggression on the part of J.L. Thus, we conclude section 90.404(l)(b)2. is a statutory exception if the supreme court has adopted a legal principle that the State may not introduce rebuttal evidence to explain or contradict evidence which the State itself offered and the State is forced to admit a confession contending self-defense as the only evidence which proves the defendant was the killer.
The State argues this case is distinguishable from Peterka because here the defense offered evidence of self-defense that went beyond evidence presented by the State. We find the argument supports another basis for an exception to the principle that the State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered. The State introduced portions of Loureiro’s recorded second confession because it was the only evidence that directly connected him to the murder and there was insufficient evidence to circumstantially link him to the murder. Knowing the defense would use the rule of completeness to admit portions of the recording to show Loureiro acted in self-defense, the State initially presented only those portions of the confessions that showed Loureiro got mad at J.L. for making certain sexual advances towards him, and Loureiro’s admission that he went berserk and killed J.L.
In contrast, in the name of completeness, Loureiro introduced additional portions of the confession in which he described a significantly different and more aggressive sexual assault by the victim. Evidence presented by the defense to enhance the description of the victim’s aggression in a completely different direction from that presented by the State should be an exception to the legal principle that the State may not introduce rebuttal evidence to explain or contradict evidence that the State itself offered. Thus, because the defense presented different evidence of self-defense, the State was allowed to rebut that under section 90.404(l)(b)2.
We do not believe the supreme court has announced a new legal principle in Peterka or Stoll establishing that the State can never introduce rebuttal evidence to explain or contradict evidence that the State itself offered. Instead, we believe the supreme court intended to prohibit the State from setting up a strawman scenario to introduce evidence of the victim’s character for peacefulness. However, if we are incorrect, then we determine that exceptions to the principle apply in this case, and the trial court did not err in admitting rebuttal evidence as to the victim’s reputation for peacefulness.

Reversed and remanded for a new trial.

TAYLOR and MAY, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 461, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Loureiro raises seven issues on appeal. We affirm on the remaining five issues without discussion.

. The State alleged that the killing occurred on January 2, 2001. The delay in indictment was due to Loureiro's flight to Nicaragua.

. On retrial, the case was assigned to a Fifteenth Circuit judge. The venue for the retrial remained in Broward County (the Seventeenth Circuit).

. Although the explanation is not clear from the record, arguments in the briefs indicate the State chose not to use the Nicaraguan confession because the defense was contesting that proper Miranda warnings were given pri- or to that confession. The defense wanted to call a Nicaraguan jail official to seek suppression of the confession, but was having difficulty securing the presence of the official for a hearing or trial. To avoid an appellate issue regarding the Nicaraguan confession, the State made a tactical decision to use the recorded second confession for the retrial.

. Section 90.108(1), Florida Statutes (2001).

. In Rigterink, our supreme court stated "for a Florida court to admit a confession, ‘the confession [] must pass muster under both the state and federal constitutions.... [A court must] examine the confessions initially Under our state Constitution; only if they pass muster here need we re-examine them under federal law.’ That is because '[i]n any given state, the federal Constitution thus represents the floor for basic freedoms; the state constitution, the ceiling.’ ” Rigterink, 66 So.3d at 888 (internal citations omitted). Because we have determined the warnings given Loureiro do not meet federal muster, we do not address whether the warnings were adequate under the Florida Constitution.

. In Kight v. State, 512 So.2d 922 (Fla.1987), the supreme court held that a defendant who reinitiated contact with law enforcement after having invoked his right to counsel was entitled to fresh Miranda warnings. In Christmas v. State, 632 So.2d 1368 (Fla.1994), the supreme court held fresh Miranda warnings were not needed if the defendant reinitiated conversation with law enforcement after invoking his right to counsel and had provided information about the case during the first interrogation prior to invoking his right to counsel.

. In State v. Hunt, 14 So.3d 1035 (Fla. 2d DCA 2009), the Second District cited to Davis, but merely for the proposition that our supreme court has rejected "an overly mechanical application of Miranda.” Id. at 1041. (quoting Davis, 698 So.2d at 1189).

. Interestingly, a search of case law regarding the comparable federal evidence code provision, Federal Rule of Evidence 404(a)(2)(c), reveals no reported cases.