# IN THE COURT OF APPEALS OF IOWA

No. 16-0323
Filed April 5, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**EDWARD M. CUSIC,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Fae E. Hoover-Grinde, Judge.

        Defendant appeals from his conviction and sentence.  **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Brenda J. Gohr, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., Vaitheswaran, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**SCOTT, Senior Judge.**

Edward Cusic was convicted of murder in the second degree for the death of his mother, Anita Labkon. He was sentenced to an indeterminate term of confinement not to exceed fifty years, with a statutory minimum of 70% of his sentence, along with restitution and costs. He now appeals. For the following reasons, we affirm his conviction and sentence.

## I. Background Facts

On December 7, 2012, officers from the Cedar Rapids Police Department responded to a call from Cusic in which he admitted killing Labkon with a crowbar. Officers found Labkon in her bedroom. A pill container was on her chest and a sheathed dagger was underneath her pillow.

Cusic was arrested. On the drive to the police station, he was sleepy and slow to respond to officers; his pupils also failed to dilate properly. He told police his mother came at him with the dagger and he grabbed the crowbar from the garage to defend himself. A few days after his arrest, Cusic spoke to a newspaper reporter. He told the reporter his mother threatened him with a gun.

The defense retained experts to assist with the case. The first expert retained, Dr. Carroll Roland, was unable to reach a conclusion as to Cusic's capacity at the time of the incident and recommended retaining another expert. The defense then retained Dr. Arthur Konar. Dr. Konar examined Cusic and testified his opinion was Cusic suffered from diminished capacity at the time of the incident. Dr. Konar testified Cusic lacked the ability to form the specific intent to kill his mother. Dr. Konar cited evidence of Cusic's history of head trauma, seizure disorders, and substance abuse to support his opinion.

On rebuttal, the State called Dr. Daniel Tranel, an expert in neuropsychology. The defense objected to his testimony on several grounds, including that Dr. Tranel's testimony came as a surprise. In fact, the State had originally retained a different expert, Dr. Michael Taylor, who had examined Cusic and prepared a report, which was provided to the defense. However, Dr. Taylor was unable to testify due to a family emergency. Dr. Tranel had not examined Cusic. Dr. Tranel was allowed to testify; he opined Cusic did not suffer from diminished capacity at the time of the incident.

Cusic was convicted and sentenced. He now appeals.

## II.    Analysis

### a.  Confrontation

Cusic raises several claims. He first argues the district court violated his constitutional right to confront witnesses against him by allowing Dr. Tranel to testify. *See* U.S. Const. amend. VI; Iowa Const. art. I, § 10. Our review of constitutional issues is de novo. *State v. Newell*, 710 N.W.2d 6, 23 (Iowa 2006).

The Confrontation Clause bars admission of testimonial statements by declarants who are not subject to cross-examination. *See Williams v. Illinois*, 132 S. Ct. 2221, 2238 (2012); *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009); *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Cusic argues statements in Dr. Roland's report admitted through Dr. Tranel's testimony were testimonial, Dr. Roland was not subject to cross-examination, and therefore, allowing Dr. Tranel to testify about the report was constitutionally improper.

Assuming arguendo Cusic is correct, we still conclude this claim fails.  The purpose of Dr. Tranel's testimony was to address Cusic's defenses of diminished capacity and intoxication.  Both defenses seek to undermine the "specific intent" element of first-degree murder, the crime Cusic was originally charged with.  *See State v. Serrato*, 787 N.W.2d 462, 469 (Iowa 2010) (discussing necessary intent for first-degree murder); *State v. Douglas*, 485 N.W.2d 619, 621 (Iowa 1992) (discussing defense of diminished capacity); *State v. Caldwell*, 385 N.W.2d 553, 557 (Iowa 1986) (discussing intoxication and specific intent).  Dr. Tranel was tasked with rebutting the defendant's argument as to these defenses; he clearly failed to do so, however, as the jury convicted Cusic of second-degree murder and not first-degree murder.  *See State v. Lyman*, 776 N.W.2d 865, 877 (Iowa 2010) ("It is well-settled law that murder in the second degree is a general intent crime only requiring proof of malice aforethought."), *overruled on other grounds by Alcala v. Marriott Int'l*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).  We therefore conclude any constitutional error was harmless.  *See Chapman v. California*, 386 U.S. 18, 24 (1967) (holding constitutional error is harmless if "the beneficiary of a constitutional error . . . prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").

### b.  Hearsay

Cusic next argues the district court erred in admitting Dr. Tranel's testimony insofar as it was based on inadmissible hearsay contained in Dr. Roland's report.  Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Iowa R. Evid. 5.801(c).  Hearsay must be excluded unless an

exception or exclusion permitting its admission applies. *See* Iowa R. Evid. 5.802. "Hearsay inadmissible under the rule is considered to be prejudicial to the nonoffering party unless otherwise established." *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003).

This claim fails as well. Cusic does not contend Dr. Tranel was not an expert witness. "If experts in the particular field would reasonably rely on [facts or data the expert has been made aware of or personally observed] in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Iowa R. Evid. 5.703. "Accordingly, an expert may rely upon hearsay evidence in giving an opinion to the jury." *Hutchison v. American Family Mut. Ins. Co.*, 514 N.W.2d 882, 889 (Iowa 1994).

*Hutchison* is directly on point. There, an expert neuropsychologist relied on records prepared by another examining physician to reach conclusions about a patient whom the expert did not personally examine. *See id.* Our supreme court held the trial court did not abuse its discretion in allowing the expert's testimony: "Dr. Moore's failure to examine Connie in person went to the weight of his testimony, not its admissibility." *Id.* Likewise with Dr. Tranel.

### c. Rebuttal

Cusic next argues the district court violated Cusic's right to due process by allowing Dr. Tranel to testify as a rebuttal witness when the State failed to disclose Dr. Tranel as a potential witness. Simply put, the State is not required to disclose rebuttal witnesses. *See State v. Belken*, 633 N.W.2d 786, 795 (Iowa 2001). This claim fails.

Relatedly, Cusic claims his Sixth Amendment right to counsel was violated when the district court allowed Dr. Tranel to testify on rebuttal after Dr. Konar—whose testimony Dr. Tranel intended to rebut—was excused. We again reiterate the statement that the State is not required to disclose rebuttal witnesses. *See id.* The court is not obligated to try the defendant's case for him. The case cited by Cusic, *State v. Van Scoyoc*, 511 N.W.2d 628, 631 (Iowa Ct. App. 1993), is inapposite as the question there was whether an indigent defendant was denied effective assistance when a court refused to authorize funds for an expert's time spent testifying. Here, nothing prevented Cusic from having his expert testify again. Cusic could have asked his expert to stay to address any potential rebuttal testimony, but he apparently did not do so. That strategic decision does not implicate any constitutional issue.

### d. Character Evidence

Cusic next argues the district court erred in allowing the State to introduce evidence of the victim's character for peacefulness during the State's case in chief. Evidence of the victim's character for peacefulness may be offered by the prosecution "[w]hen the victim is unavailable to testify due to death or physical or mental incapacity . . . to rebut evidence that the victim was the first aggressor." Iowa R. Evid. 5.404(a)(2)(A)(iii). Cusic contends the prosecution offered evidence of his mother's peacefulness before he had put on evidence of his self-defense theory—that is, the prosecution's evidence was not offered to "rebut" any evidence. The district court allowed the character evidence on the basis the State had introduced statements by the defendant that implicated his self-defense theory. The court allowed the State to rebut that evidence. This is

similar to the approach in Florida, cited by both parties, that permits the State to rebut its own evidence provided it does not merely "set[] up a strawman scenario" while doing so. *Loureiro v. State*, 133 So. 3d 948, 957 (Fla. Dist. Ct. App. 2013). The State did not set up a straw man here.

### e. Jury Instruction

Finally, Cusic claims the court erred in denying his request for a jury instruction on imperfect self-defense. However, the doctrine of imperfect self-defense has never been recognized in Iowa. *State v. Gomez-Rodriguez*, No. 06-0527, 2007 WL 1688987, at *3 (Iowa Ct. App. June 13, 2007). We have previously held "the doctrine . . . plainly conflicts with Iowa statutory law." *Id.* We decline to adopt the doctrine of imperfect self-defense, and the court was under no obligation to submit the theory to the jury. This claim fails.

### III.   Conclusion

For the foregoing reasons, we affirm Cusic's conviction and sentence.

**AFFIRMED.**